**POLLEY v. WESTOVER and three other cases.**

Nos. 7351–PH, 7352–M, 7353–BH, 7354–B.

District Court, S. D. California, Central Division.

March 15, 1948.

Charles H. Carr, of Los Angeles, Cal., for plaintiffs.

James M. Carter, U. S. Atty., E. H. Mitchell and George M. Bryant, Asst. U. S. Attys., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, all of Los Angeles, Cal., for defendant.

HALL, District Judge.

1. These actions, which were consolidated for hearing and trial, are for the recovery of Federal income taxes and interest paid by plaintiffs, who are residents of the County of Los Angeles, State of California, to defendant, Collector of Internal Revenue for the Sixth Internal Revenue Collection District of California. This Court has jurisdiction under the provisions of the Judicial Code of the United States, Section 24, Paragraph 5, as amended, 28 U.S.C.A. § 41, Sub-section 5.

2. During the calendar year 1941 and for many years prior thereto, Frank A. Polley and Fred M. Polley were engaged as equal partners in the wholesale liquor business under the fictitious name and style of Polley Bros. Distributing Co. Both Frank A. and Fred M. Polley held their interest in the Polley Bros. Distributing Co. as community property with their wives, Alethea F. and Edith Buryl Polley.

3. Frank A. Polley served in the capacity of salesman for the wholesale liquor

974

business and made weekly calls on each of their customers to take orders for liquor. In negotiating with the retail dealers for the sale of liquor, Frank Polley would agree that, upon receipt of a check for the invoiced price of the liquor, he would simultaneously transmit to the retail dealer in cash a certain percentage of the invoiced price, depending upon the quantity of liquor purchased.

4. Polley Bros. Distributing Co. transmitted cash equal to five per cent of the invoiced price to retail dealers who purchased less than $500 worth of liquor, seven and one-half per cent to purchasers of between $500 and $750 worth of liquor, and large accounts purchasing more than $1,000 worth received ten per cent of the invoiced price in cash.

5. Retail dealers were all treated equally, based upon the quantity of liquor purchased, with out regard to whether or not they purchased their liquor exclusively from Polley Bros. Distributing Co. No discrimination or preference was made with respect to the products of any particular distiller.

6. These payments to retail dealers of a percentage of the invoiced price in cash for quantity purchases were in accord with an established trade custom of wholesale liquor dealers in the Fourth Board of Equalization District, to wit: Santa Barbara, Ventura, Los Angeles, San Bernardino, Riverside, Orange, San Diego and Imperial Counties, where Polley Bros. Distributing Co. made its sales. Competition among wholesale liquor dealers was such that a dealer could not secure an order for liquor unless he agreed in advance to reduce the price of the liquor by paying in cash an agreed percentage of the invoiced price for quantity purchases. It was necessary for Polley Bros. Distributing Co. to give such quantity discounts in order to sell liquor to its retail customers, R. 24, 61.

7. After Polley Bros. Distributing Co. received an order, the liquor would be delivered during the week, and the following week, when Frank Polley called to take the next order, he would receive a check for the invoiced price of the merchandise delivered during the past week. In ac-

cordance with the previous agreement with the dealer, he would simultaneously transmit to the retail dealer in cash the percentage agreed upon with respect to the quantity of liquor purchased. A record of all such payments was kept in a memorandum book of Polley Bros. Distributing Co., and such payments were carried in the general ledger under the heading of "sales expense".

8. On June 28, 1940, the Polley Bros. Distributing Co. received a letter from the Federal Alcohol Administration, Enforcement Division, to the effect that the cash payments to retail dealers for quantity purchases were in violation of Section 5 (b) (3) of the Federal Alcohol Administration Act, 27 U.S.C.A. § 205 (b) (3).

9. In accordance with a suggestion contained in such letter, the Polley Bros. Distributing Co. made an offer of $75 in compromise of the alleged violation of the Federal Alcohol Administration Act. On December 5, 1940, the Polley Bros. Distributing Co. received a letter from Stewart Berkshire, Deputy Commissioner of Internal Revenue, Alcohol Tax Division, in which the $75 was returned to the Polley Bros. Distributing Co. The letter from the Alcohol Tax Division stated that such cash payment, which was part of the sale in each transaction and amounted to a reduction of the sales price, was not in violation of the Federal Alcohol Administration Act.

10. Section 54 (i) of the California Alcoholic Beverage Control Act, California General Laws, Act 3796, declares that it is a misdemeanor for a wholesaler or any officer, director or agent of a wholesaler to "Give secret rebates or make any secret concessions" to a retail dealer.

11. No criminal proceedings have ever been instituted against Polley Bros. Distributing Co. by the State of California charging that the cash payments to retail dealers were "secret rebates", nor has there ever been any finding by the State Board of Equalization that such cash payments by Polley Bros. Distributing Co. were "secret rebates" or "secret concessions".

12. The trade custom which was followed by the Polley Bros. Distributing Co.,

of reducing the invoiced price of liquor by cash payments for quantity purchases, was known to, and followed generally by, wholesale and retail liquor dealers in the Fourth Board of Equalization District during the year 1941. The existence of this trade custom was known to the officers, employees and members of the State Board of Equalization, to the competitors of Polley Bros. Distributing Co., and to the wholesale and retail trade generally. Such payments were a matter of common knowledge in the trade and to the State Board, and were not secret.

13. In September, 1939, the State Board of Equalization adopted a rule as follows:

"Rule 42.

"1. Fair trade contracts must be filed for distilled spirits bearing private labels. No manufacturer, manufacturer's agent, wholesaler or rectifier may sell distilled spirits except where compliance has been made with Rule 42.

"2. The purpose of the rule is to require that fair trade contracts be filed with respect to all resale prices, from producer or importer to consumer, and the rule will be construed to that effect.

"3. A 'close out' sale under Rule 42, is construed to mean a bona fide close out of a particular distilled spirits label in the California market. Label changes based on age changes will not be deemed to be 'close outs' within the meaning of this rule.

"4. Brands of one manufacturer, rectifier, or wholesaler may be assorted for quantity discounts only, excepting brands of distilled spirits imported from other continents.

"5. Quantity discounts may be based on sales and deliveries to one purchaser within twenty-four (24) hours only. * * *"

14. In accordance with such rule, distillers filed with the State Board suggested wholesale and retail prices for liquor which authorized quantity discounts. Under Subsection 5 of Rule 42, the State Board ruled that quantity discounts would be earned only if the entire quantity was delivered within a period of twenty-four (24) hours, starting from the time of the first delivery.

15. Despite the rule of the State Board, competition in the trade was so strong that the competitive situation controlled the price at which whiskey was sold, rather than the prices filed by the distillers with the State Board. The rule of the State Board was only sporadically enforced and the trade custom of wholesalers giving cash payments to retailers for quantity purchases continued after the State Board rule was adopted. On one occasion in 1939, the Polley Bros. Distributing Co. had its license suspended for three days pursuant to Sub-division 5, Rule 42 of the State Board of Equalization. The State Board rule was suspended October 9, 1944.

16. In 1941, retail liquor customers of Polley Bros. Distributing Co. received $17,-632.26 in cash from them for quantity purchases in connection with, and as an ordinary and necessary part of the expense of the sales. On March 7, 1942, the Polley Bros. Distributing Co. filed a partnership return for the calendar year 1941, disclosing a net income for the partnership of $38,300.59. In arriving at said partnership net income, the cash payments to customers were deducted as a sales expense from gross receipts in the amount of $17,632.26.

17. On March 6, 1942, Frank A. and Alethea F. Polley filed separate, individual income tax returns on a community property basis in which they reported their one-half of the distributable share of the net income of Polley Bros. Distributing Co., and thereafter each paid the tax shown to be due on the returns. On March 7, 1942, Fred M. and Edith Buryl Polley filed separate, individual income tax returns on a community property basis in which they reported their one-half of the distributable share of the net income of the Polley Bros. Distributing Co., and thereafter each paid the tax shown to be due on the return.

18. Thereafter, the Commissioner of Internal Revenue, in auditing the partnership income tax return of Polley Bros. Distributing Co. disallowed the claimed deduction for sales expense in the sum of $17,632.26 with respect to the cash which the Polley Bros. Distributing Co. had given to retail liquor dealers. The reason given by the Commissioner for disallowing such

deduction was that such expense was not a deductible expense under the provisions of Section 23 .(a) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 23 (a).

19. Because of the disallowance of this deduction in the partnership return, the Commissioner increased the distributable share of partnership net income of Frank A. and Fred M. Polley, and because each held his partnership interest as community property, on July 14, 1945, the Commissioner mailed to Frank A. Polley, Alethea F. Polley, Fred M. Polley, and Edith Buryl Polley Notices of Deficiency in income taxes in the following amounts:

Edith Buryl Polley ............ $1,254.38
Fred M. Polley ................ 1,254.38
Alethea F. Polley ............. 1,254.64
Frank A. Polley ............... 1,254.64

20. On November 16, 1945, the deficiencies were assessed against each of the plaintiffs in the amounts set forth above, together with interest, and on November 26, 1945, each of the plaintiffs, as a result of the determination of deficiencies, paid the defendant, Collector of Internal Revenue, the following amounts:

| | Tax | Interest | Total |
|---|---|---|---|
| Edith Buryl Polley | 1,254.38 | 276.17 | 1,530.55 |
| Fred M. Polley | 1,254.38 | 276.17 | 1,530.55 |
| Alethea F. Polley | 1,254.64 | 276.23 | 1,530.87 |
| Frank A. Polley | 1,254.64 | 276.23 | 1,530.87 |

21. On November 26, 1945, each plaintiff caused to be made and filed with the defendant a written Claim for refund of income taxes and interest paid by plaintiffs to defendant for the calendar year 1941 as the result of the Deficiency Notices. Such claims sought the recovery of the tax and interest paid to defendant plus interest.

22. On January 7, 1947, the Commissioner of Internal Revenue disallowed the claims for refund in full, and thereafter the plaintiffs each filed a complaint in this court seeking recovery of the sums paid to the defendant, together with interest, as provided by law.

Conclusions of Law.

I. The sum of $17,632.26, which was paid by Polley Bros. Distributing Co. in cash to retail dealers as quantity discounts during the year 1941 in reduction of the sale price of liquor, was an ordinary and necessary business expense within the meaning of Section 23 (a) of the Internal Revenue Code.

II. The payments made by Polley Bros. Distributing Co. for quantity purchases were not "secret rebates" or "secret concessions" within the meaning of Section 54 (i) of the California Beverage Control Act.

III. The allowance of an income tax deduction for such payments would not frustrate any well defined national or state policy, Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171.

IV. Failure to allow this deduction would result in taxing the plaintiffs on amounts which they did not receive, and which, by agreement, they were not entitled to receive, because they agreed in advance with the retail dealers to reduce the purchase price of liquor by the amount of the cash payments.

V. The sum of $1,530.55 paid by Edith Buryl Polley, $1,530.87 paid by Alethea F. Polley, $1,530.87 paid by Frank A. Polley, and $1,530.55 paid by Fred M. Polley, to the defendant, Harry C. Westover, Collector of Internal Revenue for the Sixth Internal Revenue Collection District of California, on November 26, 1945, for their taxable year 1941, was erroneously and illegally demanded, collected and received by said Collector from the plaintiffs.

VI. Judgment is directed to be entered in favor of Edith Buryl Polley in the sum of $1,530.55, Alethea F. Polley in the sum of $1,530.87, Frank A. Polley in the sum of $1,530.87, and Fred M. Polley in the sum of $1,530.55 against the defendant, Harry C. Westover, Collector of Internal Revenue, with interest thereon as provided by law from November 26, 1945.