TRI-STATE BEVERAGE DISTRIBUTORS, INC., PETITIONER, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32887.   Filed March 28, 1957.

*Carl A. Swenson, Esq.*, for the petitioner.
*Julian L. Berman, Esq.*, for the respondent.

**OPINION.**

BLACK, *Judge:* The questions in this proceeding relate to certain discounts which the petitioner allowed to its customers. The petitioner seeks a reduction of excess profits tax for the years 1943 and 1944 on the ground that these discounts represented abnormal deductions under section 711 (b) (1) (J) or, on the alternative ground, that it is entitled to relief under section 722 (b) (2), because a price war depressed its base period earnings by the amount of these abnormal discounts. Petitioner in its brief chiefly argues its assignment of error that it is entitled to section 711 (b) (1) (J) relief.

### *Section 711 (b) (1) (J) Issue.*

The petitioner granted these discounts to its customers in order to meet competition. They were not quantity or cash discounts. The rate of discount varied from time to time and between customers but the rate was known at the time a sale was made. The petitioner wanted to maintain its sales at list prices insofar as possible. Therefore, it recorded its sales at the list price rather than the net price. The invoice would usually show the list price, the discount, and the net price. For a period, some of the invoices only showed the net prices. The discount, i. e., the difference between the list price and the net price, was restored to sales by journal entries at the end of each month.

The record shows that the customers would only pay the petitioner the net price, rather than pay the list price and receive the discount from the petitioner as a cash rebate.

Section 711 (b) (1) (J) provides for a disallowance of abnormal deductions in computing the excess profits net income for the base period years. Deductions under this section mean statutory deductions or deductions allowable under section 23. *Colorado Milling & Elevator Co.*, 17 T. C. 1280, 1285 (1952), appeal dismissed (C. A. 10, 1953) 205 F. 2d 551; *Crow-Burlingame Co.*, 15 T. C. 738, 752 (1950), appeal dismissed on stipulation of parties (C. A. 8, 1951) 192 F. 2d 574; *Universal Optical Co.*, 11 T. C. 608, 621 (1948). The petitioner argues that these discounts are deductions from gross income under section 23 (a), relying on *Polley* v. *Westover*, (S. D. Calif. 1948) 77 F. Supp. 973. The respondent, on the other hand, contends that these discounts are not deductions from gross income but are adjustments of the sales price that are made in order to arrive at gross income.

The *Polley* case, *supra*, did not involve a section 711 (b) (1) (J) issue but involved the deductibility of quantity discounts that were given by the taxpayer, a wholesale liquor dealer, to all customers on the same basis. The list price was collected from the customer and the discount was refunded periodically in cash. The State of California, the taxpayer's residence, made it a misdemeanor to "give secret rebates or make any secret concessions" to a retail dealer. It appears that in the *Polley* case, the entire list price which was collected was reported as gross income and the discounts which were refunded to customers in cash were taken as deductions from gross income under section 23 (a). The Commissioner disallowed a deduction under section 23 (a) for the discounts. The court held that the giving of the discounts did not violate the law of California or frustrate any sharply defined national or State policy and that they were ordinary and necessary business expenses under section 23 (a).

Aside from the fact that the quantity discounts in the *Polley* case, *supra*, are essentially different from those involved herein, we think the petitioner's reliance is misplaced. The *Polley* case did not discuss or decide the issue involved herein, i. e., whether the discounts were deductions to arrive at gross income or were deductions from gross income; the results would have been the same if the discounts were allowed in either instance. Here, unlike the *Polley* case, the parties agree that the discounts must be deducted to arrive at net income, but the respondent insists that the discounts are adjustments to arrive at gross income rather than deductions from gross income, relying upon *Pittsburgh Milk Co.*, 26 T. C. 707 (1956), on appeal C. A. 3.

In the *Pittsburgh Milk Co.* case, *supra*, the Pennsylvania law required the petitioner to sell milk at a list price. The taxpayer entered

into agreements with its customers to give them certain discounts. The rate of discount was known at the time of sale and the discounts were not quantity or cash discounts. It collected the full price and paid back to the customers the amount of the discounts. The question involved was "what effect, if any, should be given for income tax purposes to the allowances (sometimes called discounts or rebates) which the petitioner corporation made to certain purchasers of its milk in willful violation of the Milk Control Law of Pennsylvania." We held that the discounts were adjustments of the gross sales price made to arrive at the net sales price, i. e., that the amounts of the agreed allowances should be applied to reduce the corporation's gross sales.

The taxpayer, in the instant case, seeks a disallowance of the discounts which it contends are abnormal deductions in amounts under section 711 (b) (1) (J), in recomputing its excess profits net income for the base period years. The discounts involved herein, however, are essentially of the same nature as those involved in *Pittsburgh Milk Co.*, *supra*. Accordingly, we hold that the discounts involved herein are deductions to arrive at gross income. They are not deductions from gross income or deductions within the meaning of section 711 (b) (1) (J). The respondent's determination regarding the 711 (b) (1) (J) issue is, therefore, upheld.

## Section 722 (b) (2) Issue.

The alternative issue is whether the petitioner is entitled to relief under section 722 (b) (2). It contends that it is entitled to relief on the ground that a price war prevailed during the base period in the wholesale liquor industry of which it was a member. The petitioner did not argue this question in its brief, stating that it would submit the issue on the record in view of the decisions of the Tax Court in other instances of claimed relief based on price war.

The record contains the facts previously discussed regarding the discounts and the testimony of the petitioner's accountant that he knew of a few other wholesale liquor dealers who also gave similar discounts. Petitioner also submitted a computation of its proposed constructive average base period net income. This constructive average base period net income was arrived at by restoring to book net income or loss the excess of the discounts and free goods allowed in the base period years over the ratio of those allowed in the period prior thereto computed from the statement of income attached to the stipulation of facts.

On the basis of the record, we do not think the petitioner has established its right to relief under section 722 (b) (2). It has not shown that its business "was depressed in the base period because of temporary economic circumstances unusual in" its case or "that an industry

of which" it "was a member was depressed by reason of temporary economic events unusual in the case of such industry."

The fact that petitioner and a few other liquor dealers gave discounts does not establish a ruinous price war. It indicates nothing more than competition. Cf. *Harlan Bourbon & Wine Co.*, 14 T. C. 97 (1950); *Empire Liquor Corporation*, 25 T. C. 1183 (1956); *Seggerman Nixon Corporation*, 26 T. C. 442 (1956). We, therefore, uphold the respondent in regard to this issue.

Reviewed by the Special Division as to the section 722 issue.

*Decision will be entered for the respondent.*