**MAJESTIC SECURITIES CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 11920.**

Circuit Court of Appeals, Eighth Circuit.

June 5, 1941.

Floyd F. Toomey, of Washington, D. C. (Ellsworth C. Alvord and Alvord & Alvord, all of Washington, D. C., on the brief), for petitioner.

Edward First, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, and S. Dee Hanson, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This case comes before the court upon the petition of a taxpayer to review a decision of the United States Board of Tax Appeals (42 B.T.A. 698) redetermining deficiencies in income taxes of the petitioner for the years 1934 and 1935.

The controversy involves the determination of the proper cost basis in computing income derived from the sale of securities under Section 113(a) of the Revenue Act of 1934, 48 Stat. 680, 706, 26 U.S.C.A. Int. Rev.Acts, page 696, which provides that for determining gain or loss from the sale of property the basis "shall be the cost of such property."

The material facts, except for an exhibit received in evidence, were stipulated; and the board adopted the facts as stipulated for its finding of facts. A summary of the facts pertinent to the question for decision follows.

The securities involved in the controversy were acquired by the petitioner in two transactions with the Conqueror First National Bank of Joplin, Missouri, hereinafter called the bank. One lot of securities was acquired in 1932 and the other in 1933.

The petitioner was organized June 22, 1932, under the laws of Delaware with its principal office at Joplin, Missouri. Its purpose was to buy, own and sell stocks, bonds and other securities. Its original capital consisted of $429,000 divided into 429 shares. At the time of its organization 295¾ shares of its stock were owned by stockholders of the bank and 133¼ shares by the wife and daughter of one of the principal stockholders of the bank and by an assistant cashier of the bank. At no time, however, was the ownership of shares in petitioner by its stockholders in the same proportion as their ownership of stock in the bank.

The petitioner's acquisition of the first lot of securities occurred two days after it was organized, on June 24, 1932. As to this transaction the stipulation reads: "On June 24, 1932, the First National Bank sold to the petitioner certain securities and the petitioner paid to the First National Bank the sum of $521,720.40. The respective amounts paid by the petitioner to the First National Bank at the time the said securities were sold was equal to the cost thereof to the bank, and were all in excess of the respective prevailing market prices for said securities on June 24, 1932."

At the time of the second transaction in 1933 all the shares of the petitioner (except one-half share owned by an assistant cashier of the bank) were owned by the stockholders of the bank. The stipulation as to this transaction reads: "On April 29, 1933, the First National Bank sold to the petitioner certain securities and the petitioner paid to the First National Bank the sum of $434,359.05. The respective amounts paid by the petitioner to the First National Bank at the time the said securities were sold was equal to the cost thereof to the bank, and were all in excess of the respective prevailing market prices for said securities on April 29, 1933."

During the calendar year 1934 the petitioner sold securities in the open market, including some of the securities acquired from the bank in 1932 and 1933, for which it received $76,370.69; and in 1935 it sold similar securities for which it received $155,191.63. On its income tax returns petitioner deducted a loss for 1934 of $1,195.82, and for 1935 it included a gain of $5,384.25 on account of the sale of securities. The Commissioner determined a gain for 1934 of $16,532.40 and for 1935 a gain of $49,704.40 from the sale of the same securities. In its computations the petitioner used as its basis of cost for the securities acquired from the bank "the amounts paid to the bank representing the equivalent of the original cost thereof to the bank"; and the Commissioner used as the basis of his determination of the gain from the sale of the same securities the prevailing market prices on the dates of acquisition by the petitioner.

The principal part of petitioner's business during the years under consideration was in the securities acquired from the bank. Securities acquired from other sources were purchased at the prevailing market price.

In his letter of February 18, 1938, advising the petitioner of his determination, the Commissioner, in explanation of his adjustment, said: "Certain securities sold were purchased from the First National Bank, Joplin, Missouri, at the bank's purchase price, irrespective of market price. Most of the securities were listed on exchanges and had a specific price on the date of transfer. It therefore appears that, since the securities so acquired could have been purchased on the open market, the amount paid in excess of the market price was for a purpose other than the acquisition of securities and the increase over market does not represent a part of the cost of the securities."

The board after considering the stipulated facts concluded that the Commissioner "correctly determined that part of the amount paid the bank did not represent cost of the securities, but was for a purpose other than the acquisition of the securities."

■ It is settled that the determination of the Commissioner "has the support of a presumption of correctness, and the petitioner has the burden of proving it to be wrong." Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212; Burnet v. Houston, 283 U.S. 223, 227, 51 S.Ct. 413, 75 L.Ed. 991; Reinecke v. Spalding, 280 U.S. 227, 233, 50 S.Ct. 96, 74 L.Ed. 385; Wickwire v. Reinecke, 275 U.S. 101, 48 S.Ct. 43, 72 L.Ed. 184; United States v. Anderson, 269 U.S. 422, 443, 46 S.Ct. 131, 70 L.Ed. 347.

■ The question of petitioner's "purpose" in paying to the bank an amount equivalent to the original cost of the securities instead of buying them on the open market at the prevailing price for a less amount is a question of intent. Bogardus v. Commissioner, 302 U.S. 34, 43, 58 S.Ct. 61, 82 L.Ed. 32. Intent is a fact to be established by the party having the burden of proof. When there is no direct proof to support the issue, intent may be inferred from relevant facts in evidence. It is petitioner's contention that the stipulation quoted supra shows that the amount paid the bank was in its entirety the purchase price of the securities and that no part of that amount was for any other purpose. The stipulation does not sustain this contention. It shows only that the amount paid was the equivalent of the original cost to the bank. It does not explain how that amount was arrived at by the parties, nor what purpose the stockholders of petitioner had in mind in paying more than the amount for which the securities could have been purchased on the open market. It does not show that the payment was in fulfillment of a contract or agreement previously entered into, nor that there was any consideration for the excess paid. No motive or reason for such excess payment is suggested. In fact, the stipulation seems purposely to avoid commitment upon this point. Counsel for petitioner say in their brief that "Care was exercised in the preparation of that statement [of facts] to avoid stipulating a conclusion of law, or of fact, which might prejudice the rights of either party." Because of the absence of any direct proof of petitioner's purpose or intent in paying more than market price, the board held that it failed to sustain its burden of proof.

■■ It is true the burden upon petitioner was to prove a negative, namely, that the amount paid in excess of market price was not for a purpose other than the acquisition of the securities. This could have been done by proving a different purpose. A negative proposition may appropriately be established by proof of an affirmative opposite. New York Life Insurance Co. v. Stoner, 8 Cir., 109 F.2d 874, 876. The way thus open to the petitioner was not utilized.

The inference of fact of the Commissioner and of the board is not an altogether arbitrary and unreasonable one. It is clear from the stipulated facts that at the time the securities were acquired from the bank their market value was much less than their original cost and that the assets of the bank were depreciated proportionately. When the relation of petitioner's stockholders to the bank and their resulting interest in the bank's financial condition are considered in connection with this fact it is a reasonable inference that the payment of the excess over market value was for the purpose of improving the condition of the bank. If this be true the excess was paid "for a purpose other than the acquisition of the securities", and such excess did not represent a part of the cost.

■ The amount paid in the acquisition of property is usually regarded as the cost of such property under the statute, but this is not always nor necessarily true. The question has been before the federal courts frequently, and the problem has been considered from various angles. In the following cases a stockholder or employee purchased stock for less than its current market value, and for particular circumstances present in each case the differential was held not to represent a part of the cost: Hawke v. Commissioner, 9 Cir., 109 F.2d 946; Taplin v. Commissioner, 6 Cir., 41 F.2d 454; Commissioner v. Van Vorst, 9 Cir., 59 F.2d 677; Salvage v. Commissioner, 2 Cir., 76 F.2d 112, affirmed 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511; Omaha National Bank v. Commissioner, 8 Cir., 75 F.2d 434; Ayer v. Blair, 58 App.D.C. 110, 25 F.2d 534; Robinson v. Commissioner, 6 Cir., 59 F.2d 1008.

In Burns v. Commissioner, 5 Cir., 31 F.2d 399, stockholders paid to the corporation more than the current market price of stock; and it was held that the excess was taxable, that it was not a part of the cost, that it was paid to relieve the embarrassed finances of the corporation and because of a certain moral obligation on the part of the stockholders. In Commissioner v. Matheson, 5 Cir., 82 F.2d 380, 381, a legatee accepted stocks from an estate in liquidation of a legacy at a price higher than the current market value at the time of the transfer. It was held that the differential was a part of the cost because the stipulation of facts expressly provided that the transfer was "at an agreed price." In Park v. Commissioner, 2 Cir., 58 F.2d 965, a stockholder contributed funds to a bank to prevent its failure, and it was held that such contribution was not deductible in his income tax return for the reason that it was a part of his capital investment. In Howell v. Commissioner, 8 Cir., 69 F.2d 447, a stockholder of a bank entered into a contract to indemnify the bank against loss in certain of its assets, and the court held that the contribution could not be deducted from the taxpayer's income because it was paid to prevent a serious impairment of the assets of the bank. In Pennsylvania Indemnity Company v. Commissioner, 3 Cir., 77 F.2d 92, a holding company purchased securities from its subsidiaries at the original cost to the subsidiaries, which was largely in excess of their current market value. It was held that the company could not deduct the differential from its gross income in computing income taxes. The court observed that the payment of the excess was evidently made with the purpose of restoring the depreciation in the capital of the subsidiaries due to the depreciation of their assets.

The last case cited cannot be distinguished in principle from the instant case. All of the cases cited show that the amount paid at the time of the acquisition of property is not conclusive as to the cost within the meaning of the statute.

■■ Under the facts of this case the burden was upon the petitioner to prove that the cost determined by the Commissioner is wrong. This burden is not borne by merely showing the amount paid for the securities and by showing that such amount was equivalent to the price paid by the bank. There is no basis in the facts stipulated to warrant a reversal of the decision of the board.

The order under review is accordingly affirmed.