THE WEATHER-SEAL MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27244. Promulgated June 11, 1951.

*David H. Wilson, Esq.*, for the petitioner.
*William R. Bagby, Esq.*, for the respondent.

OPINION.

TIETJENS, *Judge:* The Commissioner has determined deficiencies in petitioner's income and excess profits tax liability for the fiscal years ended May 31, 1945 and 1946, as follows:

|  | 1945 | 1946 |
|---|---|---|
| Income tax | — | $590.31 |
| Excess profits tax | $3,600 | 2,238.72 |

With respect to the determination for the fiscal year 1945, petitioner concedes that respondent properly disallowed $4,375 of the amount claimed as a deduction for capital stock tax.

The petitioner's assignments of error raise two questions: *First*, whether in determining petitioner's taxable net income for each of the fiscal years 1945 and 1946, the respondent erred in treating as an unallowable deduction from gross income, $5,000 of the amount reported on the return as employees' salaries and wages paid, where the National War Labor Board had determined that such amount was paid in violation of certain wage stabilization laws and shall be disallowed by the Commissioner of Internal Revenue in calculating costs and deductions for income tax purposes; *Second*, whether in treating the amount of $5,000 as an unallowable deduction instead of a part of the cost of goods sold (to be subtracted from gross receipts in arriving at petitioner's gross income), the resultant taxes are invalid under the Federal Constitution in that they are not levied on income within the 16th Amendment and therefore are direct taxes required to be apportioned according to population.

The facts herein are stipulated. The stipulation including the exhibits attached thereto are adopted as our findings of fact.

Petitioner is an Ohio corporation with its principal place of business at Barberton, Ohio, (hereinafter referred to as Weather-Seal). During the taxable fiscal years 1945 and 1946 its books of account were maintained on the accrual basis and its income and excess profits tax returns for those years were filed on that basis with the collector of internal revenue for the eighteenth district of Ohio.

In April 1944 Weather-Seal opened a new plant at Sturgis, Michigan, and during the taxable years involved it was engaged solely in the manufacture and sale of storm doors and windows and fittings thereto. The salaries and wages in question were actually paid to

employees at the Sturgis plant engaged solely in the manufacture of those products.

On November 23, 1945, after notice to Weather-Seal and a hearing of the evidence at the trial in Violation Case No. 60–11–4990, a Tri-Partite Panel of the National War Labor Board, Region XI, Detroit, Michigan, made findings, inter alia, that Weather-Seal had put into effect unauthorized and unapprovable increases and adjustments, totaling $12,954.17 as to hourly rates and $91,618.15 as to changes from hourly to piece rates, paid to a specified number of employees at the Sturgis branch plant during a period falling within the fiscal years 1945 and 1946, in violation of the Act of Congress of October 2, 1942 (entitled "An Act to amend the Emergency Price Control Act of 1942," etc., 56 Stat. 765; 50 USCA 961) and the Executive Orders and rulings and regulations promulgated thereunder, and that those unauthorized and illegal increases and wage adjustments were put into effect in order to maintain full production and keep the employees satisfied and that such facts constituted extenuating circumstances. Further, that Tri-Partite Panel determined, because of the extenuating circumstances, that of the total amount so found to have been illegally paid "the sum of $5,000.00 be disallowed by the Commissioner of Internal Revenue in calculating the costs and deductions of said Weather Seal Manufacturing Company, * * *, for income tax purposes" for each of the taxable fiscal years 1945 and 1946.

On December 20, 1945, the Enforcement Division of the National War Labor Board, Region XI, Detroit, Michigan, in Violation Case No. 60–11–4990 and in pursuance of the authority vested in it, affirmed the findings and determination of the Tri-Partite Panel and adopted and made them its findings and determination.

On petitioner's returns for the fiscal years 1945 and 1946 the amount of $5,000 wages, involved herein for each year, was included in the amount reported under the heading "Salaries and wages" appearing in "Schedule A—COST OF GOODS SOLD," for the purpose of arriving at "Item 3, Gross profits from sales" as reported on those returns. With respect to each taxable fiscal year 1945 and 1946 the Commissioner determined that $5,000 wages constituted "Unallowable deductions and additional income" for the purpose of determining petitioner's net income and excess profits net income, and stated as his reason for such adjustment, the following:

The Enforcement Division of the National Wage Stabilization Board for Region XI has made a determination that you paid excessive wage rates to your employees in your fiscal year ended May 31, 1945 [1946] in violation of regulations issued by the Economic Stabilization Director, (Title 32, Chapter XVIII, Subchapter A, Part 4001 of the Code of Federal Regulations), and that $5,000.00 of the amount paid to employees in said taxable year shall be disregarded for the purpose of calculating deductions under the revenue laws of the

United States. It is accordingly held that $5,000.00 of the amount deducted on your return for wages paid to employees is not allowable as a deduction in computing taxable net income.

The Commissioner's determination was made pursuant to Regulations 111, section 29.23 (a)–16 as amended by T. D. 5446 approved March 17, 1945 (1945 C. B. 108),[1] the particularly pertinent part of which provides that wage and salary payments otherwise deductible "shall be disallowed as a deduction" to the extent so certified to the Commissioner by a proper authority, as having been made in contravention of the Act of October 2, 1942, entitled "An Act to amend the Emergency Price Control Act of 1942, to aid in preventing inflation and for other purposes," (56 Stat. 765; 50 U. S. C. A. 961; also 1942–2 C. B. 332) and the orders and regulations promulgated thereunder. The petitioner does not question that the item of $5,000 wages involved herein for each of the fiscal years 1945 and 1946 was certified to the Commissioner by an authorized agency as having been made in contravention of the Act of October 2, 1942, and that thus those wages fall within the prohibition against the allowance of a deduction therefor. However, petitioner's position is that it is *not* claiming a deduction under section 23 (a) (1) (A), Internal Revenue Code, as amended by the Revenue Act of 1942,[2] for the purpose of computing net income, but instead that the wages involved constituted

[1] Regulations 111.

SEC. 29.23 (a)–16. WAGE AND SALARY PAYMENTS IN CONTRAVENTION OF WAGE AND SALARY LIMITATIONS NOT DEDUCTIBLE.—In any case in which it is certified to the Commissioner, by an administering agency authorized to act in accordance with section 4001.15 of the regulations of the Economic Stablization Director (Title 32, Chapter XVIII, Subchapter A, Part 4001, of the Code of Federal Regulations) as amended, that a wage or salary payment for which a deduction would otherwise be allowable has been made in contravention of the Act of October 2, 1942, entitled "An Act to amend the Emergency Price Control Act of 1942, to aid in preventing inflation, and for other purposes" (56 Stat., 765–768; 50 U. S. C., App., Sup., secs. 961–971), as amended, or of the regulations, orders or rulings promulgated thereunder, the entire amount of such payment shall be disallowed as a deduction and not merely an amount representing the increase or decrease made in such wage or salary in contravention of such Act or regulations, orders, or rulings promulgated thereunder, except that if the administering agency in the light of extenuating circumstances determines and certifies to the Commissioner that a lesser amount of such payment be disallowed as a deduction, then only such lesser amount shall be disallowed as a deduction. Such a payment will not be allowed for this purpose notwithstanding that the same payment is also disallowed (1) for the purpose of determining costs or expenses of an employer for the purpose of some other law or regulation, either heretofore or hereafter promulgated, including the Emergency Price Control Act of 1942, or any maximum price regulation thereof; or (2) for the purpose of determining costs or expenses under any contract made by or on behalf of the United States.

(This Treasury decision is issued under the authority contained in section 3791 (a) of the Internal Revenue Code; section 2, 56 Stat., 765; 26 U. S. C., 1940 ed., 3791 (a); 50 U. S. C., App. Sup., 962; and in section 4001.5 of the amended regulations relating to wages and salaries prescribed by the Economic Stabilization Director (8 F. R. 11960).)

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) IN GENERAL.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *

a portion of its cost of goods sold which must be *subtracted* from gross receipts in order to secure a return of capital and to arrive at its gross income entirely apart from any consideration of allowable deductions which petitioner admits are matters of legislative grace. Further, petitioner takes the position that a tax imposed on an item of cost of goods sold (even though an illegal cost) is a tax on capital and not an income tax within the 16th Amendment to the Federal Constitution. Thus petitioner assails the validity of the Act of October 2, 1942, and the orders and regulations promulgated thereunder in providing the basis for the Commissioner's determination treating the alleged item of cost as an unallowable deduction.

The Act of October 2, 1942, the expiration date of which was duly extended so as to be in full force and effect for the years here in question, provides, inter alia, as follows:

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That in order to aid in the effective prosecution of the war, the President is authorized and directed, on or before November 1, 1942, to issue a general order stabilizing prices, wages, and salaries, affecting the cost of living; * * *

\* \* \* \* \* \* \*

SEC. 2. The President may, from time to time, promulgate such regulations as may be necessary and proper to carry out any of the provisions of this Act; and may exercise any power or authority conferred upon him by this Act through such department, agency, or officer as he shall direct. * * *

\* \* \* \* \* \* \*

SEC. 5. (a) No employer shall pay, and no employee shall receive, wages or salaries in contravention of the regulations promulgated by the President under this Act. The President shall also prescribe the extent to which any wage or salary payment made in contravention of such regulations shall be disregarded by the executive departments and other governmental agencies in determining the costs or expenses of any employer for the purposes of any other law or regulation.

\* \* \* \* \* \* \*

SEC. 10. When used in this Act, the terms "wages" and "salaries" shall include additional compensation, on an annual or other basis, paid to employees by their employers for personal services * * *

Pursuant to the foregoing Act and on October 3, 1942, the President issued Executive Order 9250—Providing For The Stabilizing Of The National Economy (1942-2 C. B. 92), as to which only the pertinent portions will be summarized herein. Under Title 1 the Order established an Office of Economic Stabilization and a Director thereof and established in that office an Economic Stabilization Board and authorized the Director to formulate policy and issue directives, to Federal departments and agencies, relating to wages, salaries, and other matters. Under Title II the Order provided for the general wage and salary stabilization policies. Under Title III the Order provided for the administration of wage and salary policy and after

directing that the National War Labor Board shall continue to perform its functions and duties under Executive Order No. 9017 as modified and extended, provided, as follows:

In order to effectuate the purposes and provisions of this Order·and the Act of October 2, 1942, any wage or salary payment made in contravention thereof shall be disregarded by the Executive Departments and other governmental agencies in determining the costs or expenses of any employer for the purpose of any law or regulation, including the Emergency Price Control Act of 1942 or any maximum price regulation thereof, *or for the purpose of calculating deductions under the Revenue Laws of the United States* or for the purpose of determining costs or expenses under any contract made by or on behalf of the Government of the United States.  [Emphasis added.]

Further, under Title VI the Order provided that salaries and wages thereunder "shall include all forms of direct or indirect remuneration to an employee or officer for work or personal services performed for an employer or corporation."

On October 27, 1942, the President approved the regulations promulgated by the Economic Stabilization Director, Title 32—National Defense.—Chapter XVIII, Subchapter A, Part 4001.—Wages and Salaries (1942–2 C. B. 361), which, inter alia, under section 4001.2 vested in the National War Labor Board authority to make determinations "conclusive upon all executive departments and agencies of the Government" whether any wage payments are made in contravention of the Act of October 2, 1942, and orders and regulations thereunder in cases of wage and salary payments, inter alia, not in excess of $5,000 per annum to persons not employed in an executive, administrative, or professional capacity and under section 4001.4 vested in the Commissioner of Internal Revenue authority to make similar determinations in cases other than as prescribed for the National War Labor Board.

Executive Order No. 9672 issued on December 31, 1945, established within the Department of Labor a board known as the National Wage Stabilization Board and vested in it all the powers, functions, and responsibilities of the National War Labor Board.

In this proceeding the National War Labor Board determined that the item of $5,000 wages involved herein was in contravention of the Act of October 2, 1942, and in his deficiency notice the respondent referred to the National Wage Stabilization Board, which reference is inconsequential to this proceeding.

The petitioner points out that the Act of October 2, 1942. provided that the unlawful wages and salaries "shall be disregarded * * * in determining *costs and expenses* of any employer for purposes of any other law or regulation" [emphasis added], and that the Executive Order used similar language but added, inter alia. the phrase "or for the purpose of calculating *deductions* under the Revenue Laws of the

United States" [emphasis added]. Petitioner then argues that by such phrase the Executive Order intended that the unlawful wages and salaries shall be disregarded for tax purposes only to the extent that they fall in the category of those ordinarily allowed as deductions from gross income as differentiated from wages falling in the category of cost of goods sold and as such constituting capital. In our opinion no such differentiation was actually intended or even implied. The Executive Order was merely more explicit in mentioning the revenue law which was simply one "other law" affected by the Act of October 2, 1942. Both the Act and Executive Order directed that the unlawful wages and salaries shall be disregarded, i. e., ignored, as constituting allowable "expenses." It is clear that Congress, in enacting the Act of October 2, 1942, and the President, in promulgating Executive Order 9250, had in mind section 23 (a) (1) (A) of the Internal Revenue Code which specifically provides for the *deduction* of *expenses* paid or incurred in carrying on trade or business, including a "reasonable allowance" for compensation for personal services rendered. Accordingly, both the Act and the Executive Order, in providing that wages and salaries paid in contravention thereof shall be disregarded in determining deductible expenses, thereby declared, in effect, that as a matter of law such payments shall not constitute reasonable compensation deductible under section 23 (a) (1) (A), *supra*.

Under the foregoing construction of the laws involved and under the facts herein, namely, that the item of $5,000 wages in controversy in each year was paid as compensation for personal services rendered and in contravention of the Act of October 2, 1942, and the Executive Order, rulings, and regulations thereunder, we conclude that such payment is not deductible as a business expense because it did not constitute reasonable compensation.

However, even if the Act of October 2, 1942, and the Executive Order did not have the effect of amending the revenue laws, they made it unlawful either to pay or receive wages and salaries in contravention thereof and clearly laid down a rigid criterion as a matter of public policy that such payments shall not be allowed as an expense of doing business. In our opinion, this Court may not disregard that specifically provided criterion, for tax purposes, for to do so would result in a direct frustration of the underlying public policies of the Act of October 2, 1942, and the authorized Executive Order promulgated thereunder. Cf. *Rossman Corporation* v. *Commissioner*, 175 F. 2d 711, and *National Brass Works, Inc.*, 16 T. C. 1051. Cf. *Lilly* v. *Commissioner* (C. A. 4, 1951), 188 F. 2d 269, affirming 14 T. C. 1066, where an optician's kickback payments to doctors, although not unlawful, were held to be contrary to public policy and therefore not a deductible business expense. In that case the effect of

the decision was to penalize the optician by taxing him on a larger net income than was actually realized from his business when viewed from the standpoint of what had been paid out.

We regard as unsound the petitioner's major premise that the item of wages involved constitutes a part of its capital cost which is inviolable for income tax purposes and that therefore such wages may not be properly regarded, for any reason, as falling in the category of a deduction subject to question as to whether allowable or disallowable under section 23 (a) (1) (A), *supra*. It is true that on the tax return forms, and also for general accounting purposes, direct labor costs are treated as a part of the cost of goods sold in calculating gross receipts from a trade or business while other wages and salaries paid or incurred are treated as a business expense deduction. However, the fact remains that both types of payments constitute compensation for personal services rendered which under the Internal Revenue Code, may be allowed as a deduction in computing taxable net income only if reasonable in amount. The end result is the same whether the expense for compensation paid or incurred is taken into account in one schedule on the return as part of the cost of goods sold or in another schedule as a separate deduction, namely, net income is thereby reduced; and it would be wholly unrealistic to say that the former may not be questioned as to reasonableness of amount while the latter may be. The use of an unreasonable amount as wages at either place on the return would result in an unrealistic net income, for tax purposes. Furthermore, the label "cost of goods sold" is not so sacrosanct that the items contained therein may not be questioned in arriving at correct net income as distinguished from a return of capital. In the recent case of *American Pitch Pine Export Co.* v. *Commissioner* (C. A. 5, 1951), 188 F. 2d 721, affirming a Memorandum Opinion, it was held that an actual inventory available after the close of the taxable year and prior to the filing of the return, should be used in place of a smaller estimated inventory of the number of board feet of lumber on hand as reported on the return, because the latter "increased the cost of goods sold * * * and reduced taxpayer's income from sales." Thus in that case an item included in the cost of goods sold was questioned and modified so as to correctly reflect income. In *Majestic Securities Corporation* v. *Commissioner*, 120 F. 2d 12, affirming 42 B. T. A. 698, it was held that while the amount paid for the acquisition of property is usually regarded as the *cost* for computing income derived from a sale thereof, nevertheless, the amount paid is not conclusive as to the actual cost for tax purposes and further held that an amount smaller than that paid may be properly determined as cost basis to correctly reflect income.

The petitioner relies on *Lela Sullenger*, 11 T. C. 1076, (petition for review dismissed C. A. 5, February 20, 1950), as apposite. There, the

taxpayer claimed the excess paid over O. P. A. price for meat as part of the cost of goods sold to arrive at gross income and not as a deduction in computing net income. In deciding in favor of the taxpayer this Court said, inter alia, at page 1077:

* * * Section 23 makes no provision for the cost of goods sold, but the Commissioner has always recognized, as indeed he must to stay within the Constitution, that the cost of goods sold must be deducted from gross receipts in order to arrive at gross income. No more than gross income can be subjected to income tax upon any theory. * * * No authority has been cited for denying to this taxpayer the cost of goods sold in computing his profit, which profit alone is gross income for income tax purposes. It is unnecessary to discuss cases involving deductions, since this case does not involve any deduction. * * *

The *Sullenger* case, *supra*, is distinguished from the instant case on both the facts and the law involved and is therefore not apposite. There, the item of cost of goods sold involved the purchase price paid for property acquired (which price or cost may have been properly questioned and redetermined as to amount for tax purposes under the principle announced in the *Majestic Securities* case, *supra*, but was not) and, further, no authority was found to deny the taxpayer the use of its actual cost despite the fact that the portion thereof in controversy was paid in contravention of the O. P. A. price. In other words, the amount there involved was not allowed as a deduction under section 23, but was the amount paid for meat and so allowed as a subtraction under section 113 in computing gain or loss from the later sale of the meat. Here, the item involved is wages which although referred to as part of the cost of goods sold nevertheless constitutes compensation for personal services rendered and as such is specifically dealt with as a business expense deduction under section 23, *supra*, and, further, as hereinbefore set out, there is a law directing the disallowance of those wages as an expense.

In the instant proceeding the extended arguments on brief as to the War Powers of Congress, the scope of the 16th Amendment to the Federal Constitution and as to whether the tax in controversy is direct or indirect, etc., have been considered, but in our opinion are wholly beside the real issue and need not be discussed herein. There can be no doubt but that the taxes involved are income taxes imposed by, and asserted by the Commissioner, under sections 13 and 710 of the Internal Revenue Code as in effect and applicable to the taxable years in controversy and relating to income tax and excess profits tax.

We conclude that the Commissioner properly disallowed as a deduction the disputed item of $5,000 paid as wages in each of the fiscal years 1945 and 1946.

Reviewed by the Court.

*Decision will be entered for the respondent.*