NATIONAL BISCUIT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54327.   Filed December 6, 1957.

*Montgomery B. Angell, Esq.,* and *John A. Reed, Esq.,* for the petitioner.

*Charles B. Markham, Esq.,* for the respondent.

FISHER, *Judge:* Respondent determined a deficiency in petitioner's income and excess profits tax for 1950 of $219,504.64. The deficiency, to the extent in issue, is based on respondent's determination that there should be no disallowance of the deduction for vacation pay in 1949, a base year, in computing petitioner's excess profits tax credit for 1950 and 1951. The questions presented are (a) whether or not vacation pay constitutes a "class of deductions" as that term is used in section 433 (b) (9) of the Internal Revenue Code of 1939; and (b) whether any of the provisions of section 433 (b) (10), I. R. C. 1939, apply to bar petitioner from invoking the benefits of section 433 (b) (9), *supra.*

FINDINGS OF FACT.

Some of the facts have been stipulated and as so stipulated are incorporated herein by this reference.

Petitioner is a corporation engaged in the manufacture and sale of bakery products. It keeps its books and files its returns on an accrual basis and for calendar years. Its excess profits credit for the years 1950 and 1951 was computed according to the income method under section 435 of the Internal Revenue Code of 1939, in determining its excess profits tax liability for the years 1950 and 1951.

In the years prior to 1949, all individuals in the employ of the petitioner were eligible, either through company contracts with the bakers' union or through company agreements with employees not covered by union contracts, to 1 week's vacation with pay after 1 year's continuous service with the company, 2 weeks' vacation with pay after 3 years of continuous service with the company, and 3 weeks' vacation with pay after 20 years of continuous service with the company.

The obligations of the company and the rights of the employees were not spelled out in sufficient detail under the agreements and contracts mentioned above, in that the employees were not entitled as of right to a vacation with pay in a subsequent year on account of services performed in the prior year. Instances arose which were not covered in the agreements or contracts and many cases had to be decided on their own facts. One reason for the change in 1949 in the vacation pay provision of the union contract (see *infra*) was to clear up the uncertainty and confusion under the pre-1949 contract provisions as to vacation pay.

In October 1949, petitioner entered into the new union contract covering about 51 per cent of its employees, which applied to 1949 and subsequent years. These contracts expressly provided for the first time that every union employee who had completed at least 1 year's employment by the end of each year was entitled to 1 week's vacation with pay, and additional weeks with pay depending upon the length of time of such employment to the end of the year, provided the employee was on the payroll of the company through the last regularly scheduled working day of the completed year. Thus, an employee who had completed the necessary period of employment and was on the payroll as of the last regularly scheduled working day of a completed year, was, for the first time upon termination of employment on that date, entitled as of right and unconditionally to vacation pay for the subsequent year in the manner specified in the contract.

Upon execution of such union contracts in October 1949, the petitioner, by notices dated November 22, 1949, which were posted on conspicuous bulletin boards in all its manufacturing plants, bakeries, sales branches, and other locations, extended a similar right to all of its employees not covered by the 1949 union contract referred to above.

As a result of the change in the labor contracts in October 1949 and the agreement with the nonhourly rated employees (not covered by the labor contracts), the petitioner set up on its books at the end of 1949 an accrued liability for vacation expense for 1950 as well as the vacation expense actually paid for the year 1949. Respondent concedes that the said liability was properly accrued and raises no question with respect to the amounts actually paid for 1949.

In the company's annual report to its stockholders for the year 1949, the management called the attention of the stockholders to the doubling-up in vacation expense for 1949 because such a doubling-up

was considered by the management to be unusual and out of the ordinary. In the report the company refers to vacation pay as wages paid during vacations. It also refers to the item as vacation payments.

The petitioner filed a Federal income tax return for 1949 on Form 1120. On such return, the vacation expense attributable to the hourly rated employees (covered by the labor contract) was reported in the figure of $158,985,082.89 appearing as item 2 on such return (cost of goods sold) ; and in Schedule A on page 2 of such return, such expenses were included in the item of $50,797,025.64 opposite the caption "Salaries and Wages." The vacation expense attributable to the non-hourly rated employees was partly in the item of $548,100 in item 16 captioned "Compensation of Officers" and partly in the item of $41,705,096.80 in item 17 captioned "Salaries and Wages (not deducted elsewhere)." This same practice was followed in the petitioner's income tax returns in the years prior to 1949 and for the years subsequent to 1949.

Petitioner's total vacation expense for 1949 (included in items 2, 16, and 17 of the petitioner's 1949 income tax return as indicated above) was $5,975,279, and on audit by the Internal Revenue Service such amount was allowed in computing petitioner's net income for 1949. Of this amount, $2,960,028.89 constituted vacation expense actually paid in 1949, and the balance of $3,015,250.11 constituted an accrued liability on account of vacation pay as of December 31, 1949. The liability of $3,015,250.11 accrued in 1949 was under and pursuant to the aforesaid labor union contracts and the agreements with employees not covered by union contracts but was not actually paid in 1949.

In the years prior to 1949, the petitioner, for income tax purposes, was allowed only vacation expense actually paid in such prior years, and in all years after 1949, the petitioner has been allowed only vacation expense accrued as of December 31 in each of such years.

The following were the total amounts of vacation expense allowed for each of the following years on audit of petitioner's income tax returns for those years:

| | | | |
|---|---|---|---|
| 1945 | $1,315,704 | 1949 | $5,975,279 |
| 1946 | 1,727,901 | 1950 | 3,341,022 |
| 1947 | 2,345,855 | 1951 | 3,540,165 |
| 1948 | 2,630,495 | | |

Vacation expense for 1949 exceeded 115 per cent of the average vacation expense deducted by petitioner in the prior 4 years.

The petitioner's net sales, gross income, net income, and excess profits net income per income tax returns after audit by respondent, for the years 1945 through 1951, were as follows:

| Year | Net sales | Gross income | Net income | Excess profits net income |
|---|---|---|---|---|
| 1945 | $197,907,188.76 | $81,170,173.58 | $26,192,437.21 | $26,094,241.86 |
| 1946 | 212,961,924.11 | 87,640,166.42 | 28,938,938.42 | 28,172,917.79 |
| 1947 | 256,102,942.60 | 105,691,756.91 | 37,299,957.25 | 36,786,339.73 |
| 1948 | 282,079,148.82 | 111,496,169.26 | 34,241,008.76 | 33,769,699.35 |
| 1949 | 277,344,442.77 | 119,154,930.08 | 36,034,054.28 | 35,627,518.43 |
| 1950 | 279,999,742.71 | 132,511,903.05 | 44,611,505.28 | 39,474,230.29 |
| 1951 | 309,827,385.56 | 135,113,546.21 | 31,785,937.60 | 31,525,533.88 |

The progressive increase in the petitioner's gross income for the years 1945–1951 was due to the normal growth of the petitioner's business.

The increase in petitioner's vacation expense in 1949 was due to the fact that petitioner not only paid expenses for vacations taken in 1949 but also accrued a liability for 1950 vacation expense under the 1949 labor contract and the company agreement with respect to nonhourly workers conforming with that contract.

The new provision in the labor union contracts in 1949 with respect to vacation pay and the agreement by petitioner to make the same vacation allowance as to its other employees were not the cause of any increase in petitioner's gross income, nor were they a consequence of any increase in petitioner's gross income.

The increase in petitioner's vacation expense for 1949 did not cause a decrease in the amount of any other deduction in petitioner's base period.

The increase in petitioner's vacation expense for 1949 was not the result of a decrease in the amount of any other deduction in petitioner's base period.

The increase in petitioner's vacation expense for 1949 was not a consequence of a change at any time in the type of the business engaged in by the taxpayer.

The increase in petitioner's vacation expense for 1949 was not a consequence of a change at any time in the manner of operation of petitioner's business, the size of the petitioner's business, or the condition of the petitioner's business.

There was no substantial change in the number of petitioner's employees during the years 1948, 1949, and 1950, although the trend was slightly downward.

In 1949, at the time of the change in the treatment of vacation expense in the labor contracts, the petitioner had no notice or knowledge of the possible enactment of an excess profits tax.

Because of the accrued liability for vacation pay arising out of the labor contract entered into in 1949 and petitioner's agreement to make the same vacation allowance to employees not covered by the labor contract, petitioner set up an accrual at the end of the current year rather than taking up the expense at the time of payment in the following year which had been the practice in years in which there had been no accrued liability.

There was no intrinsic difference in the nature and character of the vacation expense in respect of the hourly rated and the nonhourly rated employees. In both instances the expense represented either payments actually made or payments accrued as of December 31.

The following practices have been consistently followed by the petitioner for many years both before, during, and after 1949. In the case of the hourly rated employees, the vacation payments and the accrued liability in respect of vacation pay appear on the petitioner's books in a separate account from the account covering the regular wages of such employees. Such account is captioned "Vacation Expense." In the case of the nonhourly rated employees, the vacation payments and the accrued liability in respect of vacation pay are included on the petitioner's books in the account captioned "Salaries and Wages." The term "hourly rated employees" embraces the petitioner's employees covered by the union contracts referred to above, which employees are directly engaged in the manufacture of petitioner's products; the term "nonhourly rated employees" covers employees not directly engaged in manufacturing, such as executives, salesmen, clerical staff, truck drivers, shipping clerks, and branch managers.

Hourly rated and nonhourly rated employees of the company are urged to take the full vacation to which they are entitled. When because of an emergency in the course of the petitioner's business an employee fails to take a vacation, the petitioner in its discretion sometimes makes additional payments to such employee as vacation pay.

Prior to 1953, hourly rated employees of the petitioner were paid their regular wages in cash. When such an employee left on a vacation he would receive cash covering his wages for the last payroll period prior to this departure and also cash covering his vacation pay in advance. The former payment was charged on the petitioner's books to the account covering regular wages, while the latter payment was charged to the account captioned "Vacation Expense." Beginning in 1953, hourly rated employees were paid their regular wages and vacation pay by check. Vacation payment is made in advance by a check separate from the check for regular wages. The check for vacation pay is not specifically designated as such, but the amount of the check is charged on the petitioner's books to vacation expense.

Employees in the nonhourly rated group have been paid their regular salaries by check for many years. On leaving for his vacation, such an employee has the option of receiving a check in advance, covering both his salary up to the date of his departure and pay in respect to his vacation time. If he does not request his check at the time of his departure on vacation, he receives a check for his salary and vacation pay at the next regular payroll date. There is no designation on such check in either case as to which portion thereof is attributable to vacation pay.

For the purpose of Federal income tax, withholding, and social security tax withholding, the amounts withheld include amounts attributable to vacation pay. In the case of any employee who terminates his employment in a given year without having taken a vacation and receives vacation pay upon termination of such employment, such taxes are withheld on such vacation pay.

Petitioner's vacation expense constituted "a class of deductions" within the meaning of section 433 (b) (9) of the Internal Revenue Code of 1939.

Of the deficiency of $219,504.64 in income tax for 1950 determined by the notice of deficiency, the petitioner, pursuant to formal notice and demand, paid to the district director of internal revenue for the second New York district on January 12, 1955, $218,504.64 with interest thereon of $49,738.24. Said payment was made subsequent to the filing of the petition in this Court.

OPINION.

The total amount of vacation pay for 1949 was in excess of 115 per cent of the average amount of vacation pay for the 4 previous taxable years. The amount was deducted by petitioner on its return for 1949 but not as a single, separate item. Vacation pay of hourly workers was included as a part of cost of goods sold and vacation pay of other workers was included as a part of wages, salaries, and officers' compensation. The questions we are to decide are (1) whether vacation pay is a "class" as that term is used in section 433 (b) (9) and (10)[1] of the Internal Revenue Code of 1939; (2) whether vacation

---

[1] The pertinent provisions are as follows:

SEC. 433. EXCESS PROFITS NET INCOME.

(b) TAXABLE YEARS IN BASE PERIOD.—For the purposes of computing the average base period net income, the excess profits net income for any taxable year shall be the normal-tax net income, as defined in section 13 (a) (2) as in effect for such taxable year, increased or decreased by the following adjustments * * *

  *       *       *       *       *       *       *

(9) JUDGMENTS, INTANGIBLE DRILLING AND DEVELOPMENT COSTS, CASUALTY LOSSES, AND OTHER ABNORMAL DEDUCTIONS.—If, for any taxable year or years within, or beginning or ending within, the base period, any class of deductions for the taxable year exceeded 115 per centum of the average amount of deductions of such class for the four previous taxable years (not including deductions arising from the same extraordi-

pay is a "deduction" contemplated by section 433 (b) (9) and (10); and (3) whether any other provision of section 433 (b) (9) and (10) bars the disallowance of the deduction in computing excess profits net income.

Section 433 (b) (9) enumerates certain specific classes and leaves to regulations prescribed by the Commissioner the enumeration of all other classes. Petitioner claims that vacation pay constitutes a class as that term is defined in the regulations. Section 40.433 (b)–3 (d) (2), Regs. 130, allows a taxpayer to group deductions in such classes other than those provided for in the statute "as are reasonable in a business of the type which the taxpayer conducts and are applicable in the light of the taxpayer's business experience and accounting practice."

Respondent argues that vacation pay is a part of wages and salaries; that it is not treated differently for tax purposes; that social security and withholding apply to vacation pay; that it is deducted as part of wages; that petitioner did not keep separate accounts with respect to nonhourly workers; and that payment to nonhourly workers was made in the same check as wages with no breakdown of the amount attributable to each. Petitioner argues that vacation pay is a separate class because it serves an objective differing from that of regular wages; because, in so doing, it performs a separate function; and because to hold otherwise would allow an obvious distortion in its average base period net income, which result would thwart the remedial nature of the statute.

Vacation pay is, of course, compensation, but is often controlled by special circumstances and subject to separate conditions (frequently as a result of negotiation of labor union contracts, sometimes wholly

---

nary event which gave rise to the deduction for the taxable year), the deductions of such class shall, subject to the rules provided in paragraph (10), be disallowed in an amount equal to such excess. For the purposes of this paragraph, each of the following groups of deductions shall constitute a class of deductions:

    (A) * * *
    (B) * * *
    (C) * * *

The classification of deductions of any class not described in subparagraphs (A) to (C), inclusive, shall be subject to regulations prescribed by the Secretary.

    (10) RULES FOR APPLICATION OF PARAGRAPH (9).—For the purpose of paragraph (9)—

    *        *        *        *        *        *        *

    (C) Deductions of any class shall not be disallowed under such paragraph unless the taxpayer establishes that the increase in such deductions—

        (i) is not a cause or a consequence of an increase in the gross income of the taxpayer in its base period or a decrease in the amount of some other deduction in its base period, which increase or decrease is substantial in relation to the amount of the increase in the deductions of such class, and

        (ii) is not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the taxpayer.

    (D) The amount of deductions of any class to be disallowed under such paragraph with respect to any taxable year shall not exceed the amount by which the deductions of such class for such taxable year exceed the deductions of such class for the taxable year for which the tax under this subchapter is being computed.

voluntary). It may assume the character of a "fringe benefit." It sometimes develops from custom in a particular area or in a particular industrial group. From one perspective it may be characterized as an amount paid in recognition of prior services but covering periods during which the employee is not working as contrasted with periods in which services are performed. It may, in this respect, be deemed akin to pensions, sick pay, and severance pay. It may be an amount measured by longevity or in recognition of extraordinary services and paid as an inducement for future loyalty. And, of course, despite the more modern trend toward recognition of the need for vacations, and the desirability of having the employer make available the "wherewithal" in one form or another, there still exist employer-employee relationships where there is no such recognition or implementation.

Somewhat similar problems have been presented to this Court under varying circumstances, both under section 433 (b) of the Korean War Excess Profits Tax Law and under section 711 (b) (1) (J) of the World War II counterpart. In *Quaker Oats Co.*, 28 T. C. 626, we held that "[s]ection 711 (b) (1) (J) was intended to be, and is, a remedial statute." We think it obvious that the objective of section 433 (b) (9), as a relief measure, is substantially the same in principle as section 711 (b) (1) (J). The principle has evolved that in order to constitute a separate class the objective and purpose of the item in question must be different in character from other items of the same general category of deductions. *Quaker Oats Co., supra.* This principle must, of course, be applied to the facts of the particular case in accordance with the purpose of the statute. Thus, in *Mine & Smelter Supply Co.*, 10 T. C. 1179 (1948), where stock bonuses were issued for the primary purpose of cementing the relationship and continued employment of the participants and for the further purpose of partially rewarding them for past services, the bonuses were treated as a separate class from salaries.

Viewing the facts of the instant case in the light of the purpose of the statute and the general rule of interpretation as set forth above, we hold that vacation pay here constitutes a separate class. There is no fundamental difference in principle in treating vacation pay as a separate class than in according a separate classification to pensions as we did in *Arrow-Hart & Hegemann Electric Co.*, 7 T. C. 1350, 1372–1375, holding that "they properly belong in a class separate and distinct from routine salaries." In the instant case, vacation pay was treated apart from regular wages in the contract with the union and in the agreement with employees not covered by the union contract. The fact that petitioner did not include it as a separate item in its tax returns is not of controlling significance. *Arrow-Hart & Hegemann Electric Co., supra.* As to accounting entries, vacation ex-

penses, both paid and accrued, for hourly rated employees appear in an account captioned "Vacation Expense" which was separate from the account covering the routine wages of said employees. It is true that in the case of nonhourly rated employees like payments and accruals are included in the account captioned "Salaries and Wages," but such vacation expense is ascertainable (and was ascertained for the purpose of this case, see stipulation, paragraphs 13, 15, and 16, and Exhibits 5-E and 6-F). Again it is our view that the use of hybrid methods, one for hourly rated and the other for nonhourly rated employees does not of itself bar relief. See *Arrow-Hart & Hegemann Electric Co., supra*.

Respondent argues that the change here was merely one of accounting procedure, having no other practical effect. Assuming, *arguendo*, that respondent's contention is factually correct, it would not appear that its effect would be to invoke any proscription of section 433 (b). See *R. & J. Furniture Co.*, 20 T. C. 857, 870 (1953), remanded for further findings on another point (C. A. 6, 1955) 221 F. 2d 795. We do not, however, agree that there was a mere change of accounting procedure. We think it is clear that there was a substantial change and that, instead of a change in accounting procedure, petitioner merely reflected the 1949 circumstances on its books in a manner consistent with its accounting method which was consistently on an accrual basis.

Respondent argues further that if we hold (as we have, *supra*) that vacation pay is to be regarded as constituting a separate class under section 433 (b) (9), it is nevertheless not a "deduction" within the meaning of section 23, and therefore cannot be a deduction under section 433 (b). Respondent urges that petitioner is therefore barred from relief under the latter section. In arguing that vacation pay is not a section 23 deduction, respondent refers to the fact that a substantial part of the vacation pay (in substance, that part payable to hourly rated employees) was a part of cost of goods sold, and was taken into account as such in determining (reducing) gross income under section 22.

Section 23 provides, in part, as follows:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for *salaries or other compensation* for personal services actually rendered; * * * [Emphasis supplied.]

We think it obvious that vacation pay is an element included in the term "compensation" as used in section 23, and therefore that that part of vacation pay (to nonhourly rated employees) which con-

cededly was not a part of cost of goods sold, was clearly deductible under section 23, and must be deemed a "deduction" under section 433 (b) (9) even under respondent's theory.

The difficulty arises in connection with vacation pay of hourly rated employees, which was accounted for as a part of cost of goods sold. It is our view that such vacation pay is in every material respect identical with the vacation pay which is not taken into account in determining cost of goods sold; that both types of vacation pay come within the term "compensation" specifically dealt with as a business deduction under section 23; and that the only reason why vacation pay of hourly rated employees is not, for all practical purposes, allowed as a deduction under section 23 is that it has already been allowed in effect, by including it in cost of goods sold and it is obvious that Congress could not have intended that it be allowed twice. Some overlapping of sections 22 and 23 is to be expected, but here, at least, gives rise to no difficulty in the practical application of the two sections. It is our view that even though properly included in cost of goods sold, and recognizing, of course, that duplication of the deduction is not to be allowed, the vacation pay of hourly rated workers is compensation, and therefore is, by definition, within the meaning of the word "deduction" as used in section 23. We find no reason, practical or in principle (and respondent suggests none), why Congress, in using the word "deduction" in section 433 (b) (9) intended to differentiate between compensation (expressly included in deductions under section 23 and without express differentiation with respect to inclusion in cost of goods sold as a part of good accounting practice) which serves originally to determine gross income, but ultimately to determine net income as well, and compensation which serves to determine net income after gross income has already been computed.

Although arising in a different context, we think that *Weather-Seal Manufacturing Co.*, 16 T. C. 1312 (1951), affirmed per curiam 199 F. 2d 376 (C. A. 6), is here significant. In that case the taxpayer, on its tax returns, included as a part of the cost of goods sold the amount of wages paid to certain employees engaged in its manufacturing plant. The National War Labor Board determined that $5,000 of the wages so paid was in violation of the wage stabilization laws and should be disallowed by the Commissioner in calculating costs and deductions for income tax purposes. Pursuant thereto, and in accordance with his own regulations, the Commissioner disallowed the item of $5,000 as a deduction in computing net income subject to income and excess profits taxes. We affirmed the disallowance. In crystallizing the problem, we said in part (16 T. C. at 1315):

However, petitioner's position is that it is *not* claiming a deduction under section 23 (a) (1) (A), Internal Revenue Code, as amended by the Revenue

Act of 1942, for the purpose of computing net income, but instead that the wages involved constituted a portion of its cost of goods sold which must be *subtracted* from gross receipts in order to secure a return of capital and to arrive at its gross income entirely apart from any consideration of allowable deductions which petitioner admits are matters of legislative grace. * * *

Later we said in part (16 T. C. at 1319) :

We regard as unsound the petitioner's major premise that the item of wages involved constitutes a part of its capital cost which is inviolable for income tax purposes and that therefore such wages may not be properly regarded, for any reason, as falling in the category of a deduction subject to question as to whether allowable or disallowable under section 23 (a) (1) (A), *supra*. It is true that on the tax return forms, and also for general accounting purposes, direct labor costs are treated as a part of the cost of goods sold in calculating gross receipts from a trade or business while other wages and salaries paid or incurred are treated as a business expense deduction. However, the fact remains that both types of payments constitute compensation for personal services rendered which under the Internal Revenue Code, may be allowed as a deduction in computing taxable net income only if reasonable in amount. The end result is the same whether the expense for compensation paid or incurred is taken into account in one schedule on the return as part of the cost of goods sold or in another schedule as a separate deduction, namely, net income is thereby reduced; and it would be wholly unrealistic to say that the former may not be questioned as to reasonableness of amount while the latter may be. The use of an unreasonable amount as wages at either place on the return would result in an unrealistic net income, for tax purposes. Furthermore, the label "cost of goods sold" is not so sacrosanct that the items contained therein may not be questioned in arriving at correct net income as distinguished from a return of capital. * * *

We added (16 T. C. at 1320) :

*Here, the item involved is wages which although referred to as part of the cost of goods sold nevertheless constitutes compensation for personal services rendered and as such is specifically dealt with as a business expense deduction under section 23, * * * [Emphasis supplied.]*

Of some significance, also, in gauging respondent's approach to the principles discussed above is his own proposed finding of fact, paragraph 10, which reads as follows:

10. Vacation pay for hourly-rated employees (as distinct from vacation pay for non-hourly-rated employees) was kept on petitioner's books as a separate account labelled "Vacation Expense" rather than in the account relating to "Salaries and Wages." (Stip., par. 8.) *However, there was absolutely no inherent difference in the nature and character of vacation expense with respect to the hourly-rated employees and non-hourly-rated employees* (Tr. 30). The *major difference between the vacation pay with respect to the hourly-rated employees and non-hourly-rated employees is that a separate account is maintained* on petitioner's books, in the case of hourly-rated employees, for purposes of cost accounting. (Tr. 71, 72.) [Emphasis supplied.]

In any event, we would indeed be surprised if respondent were to maintain that the allowance of any compensation which may be a part of cost of goods sold, to be accounted for under section 22 in

determining gross income, is relieved of the conditions that such compensation be "ordinary and necessary," "reasonable," and for "personal services actually rendered," which conditions are expressly stated in section 23 (a) (1) (A) but are not mentioned in section 22.

We realize, of course, that in *McKay Machine Co.*, 28 T. C. 185 (which arose under section 433 (b) (9)), we said, in part (p. 192), that "we have consistently adopted the view that the word 'deductions' in the phrase 'abnormal deductions' is confined to deductions under section 23 of the Code." In that case, however, we were dealing with an inventory adjustment which was obviously a section 22 adjustment, and could not in any event have been a section 23 deduction.

Likewise, in *Tri-State Beverage Distributors, Inc.*, 27 T. C. 1026 (1957), where the issue arose under the provisions of section 711 (b) (1) (J), we said in part (p. 1030) : "Deductions under this section mean statutory deductions or deductions allowable under section 23." We denied relief. The issue, however, arose in relation to discounts which we held to be adjustments of sales price and not deductions from gross income. The discounts were not quantity or cash discounts and were allowed from list price to customers in order to meet competition. Here again it is clear that section 22 adjustments were in issue and that the discounts could not have been section 23 deductions.

We have examined the general statements in *Universal Optical Co.*, 11 T. C. 608, 621 (1948), and other cases cited by respondent to the effect that the word "deduction" is limited to a statutory deduction within the meaning of sections 433 (b) (9) and 711 (b) (1) (J) but find they add no significance, in the setting of the issue in the instant case, to our discussion of *McKay Machine Co.* and *Tri-State Beverage Distributors, Inc.*, both *supra*.

In the light of the foregoing discussion, we do not think that our prior expressions foreclose the conclusion which we now reach, namely, that vacation pay (compensation) is a deduction within the meaning of section 433 (b) (9) whether such deduction is allowed under the express provisions of section 23, or allowed as part of the cost of goods sold but (as stated in *Weather-Seal Manufacturing Co., supra*) specifically dealt with as a business expense deduction under section 23.

As for the requirements of section 433 (b) (10) (C), the parties have stipulated that the increase in deductions did not cause an increase in gross income, and that the increase was not a cause or consequence of a decrease in some other deduction. The parties have also stipulated that the increase was not the consequence of a change in the type of the business engaged in by petitioner. We have found as a fact that the increase was not the consequence of a change in man-

ner of operation, size, or condition of the company. Respondent argues, however, that the increase could have been the consequence of an increase in gross income, and that for this reason if for no other petitioner is barred from the relief of the statute. Respondent suggests that labor unions would be more prompted to negotiate contracts when income of the company was going up, and that the increase in income is therefore the cause of the negotiations which led up to the increase in vacation pay deduction. We think the record sustains the view that the increase was not a consequence of an increase in gross income, and that respondent's speculative suggestion is without significance in the instant case.

In view of the conclusions reached, there is no occasion to consider petitioner's alternative contention as to classification.

*Decision will be entered under Rule 50.*