THOMPSON-HAYWARD CHEMICAL COMPANY, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64268.   Filed April 23, 1958.

*Robert S. Eastin, Esq.,* for the petitioner.
*Edward E. Pigg, Esq.,* for the respondent.

MULRONEY, *Judge:* Respondent determined deficiencies in the petitioner's income tax for the fiscal years ended January 31, 1951 and 1952, in the amounts of $11,722.06 and $1,066.28, respectively. The issues are (1) whether an increase in officers' compensation in the fiscal year ending January 31, 1947, resulted in an abnormal deduction for that year within the meaning of section 433 (b) (9) and (10) of the 1939 Internal Revenue Code which would require adjustments in the petitioner's excess profits tax credit used to determine petitioner's income and excess profits tax liability for fiscal years 1951 and 1952; and (2) whether the compensation paid to petitioner's president in fiscal year 1947 was unreasonable in amount, necessitating an adjustment within the meaning of section 452 of the 1939 Internal Revenue Code, in determining petitioner's tax for the fiscal years 1951 and 1952.

### FINDINGS OF FACT.

Some of the facts have been stipulated and they are so found.

Petitioner is a corporation organized in 1917 under the laws of the State of Missouri with its principal office in Kansas City, Missouri. Petitioner filed timely income and excess profits tax returns for the fiscal year ended January 31, 1951, with the then collector of internal revenue for the sixth district of Missouri, and for the fiscal year ended January 31, 1952, with the district director of internal revenue for the sixth district of Missouri at Kansas City, Missouri.

Petitioner's business is that of manufacturers' agent, importer, and distributor of chemicals and allied products throughout the Midwest. Petitioner maintained a number of sales outlets in this territory with warehouse facilities. During the years 1940 through 1947, petitioner did not open any new branches and there was no change in its methods of operation. Since petitioner's organization in 1917, Charles T. Thompson has dominated its activities. In the years 1943 through 1947, Thompson, together with his wife and children, owned at least 2,122 shares of petitioner's stock out of a total of 3,500 shares outstanding.

The following schedule gives the compensation of petitioner's officers, its sales, gross profits, and net income for each of the years ending January 31, 1937 through 1953:

COMPENSATION OF OFFICERS, SALES, GROSS PROFIT, AND NET INCOME, JAN. 31, 1937–JAN. 31, 1953

**January 31**

| | 1937 | 1938 | 1939 | 1940 | 1941 | 1942 |
|---|---|---|---|---|---|---|
| C. T. Thompson, President | $24,643.41 | $25,002.45 | $24,952.46 | $24,867.53 | $25,155.08 | $73,129.90 |
| G. M. Hayward, Vice President | 9,817.37 | 9,747.20 | 9,719.65 | 9,647.97 | 8,689.12 | 22,761.00 |
| C. A. Larbig, Secretary | 4,150.00 | 4,488.56 | 4,100.00 | 4,494.53 | 4,102.00 | 5,988.46 |
| L. W. Spaulding, Treasurer | 4,861.59 | 5,002.84 | | | | |
| J. T. Lockton, Treasurer | | | 2,944.14 | 3,102.63 | 3,439.11 | 5,403.65 |
| Total officers' compensation | 43,472.37 | 44,241.05 | 41,716.25 | 42,112.66 | 41,385.31 | 107,283.01 |
| Sales | 2,387,069.74 | 2,446,016.33 | 2,397,778.10 | 2,933,200.17 | 3,004,815.72 | 4,616,025.21 |
| Gross profit | 438,764.52 | 456,259.19 | 458,426.68 | 569,435.27 | 619,527.82 | 1,126,337.79 |
| Net income | 128,358.75 | 135,390.03 | 122,490.32 | 192,455.12 | 232,790.45 | 564,877.02 |

| | 1943 | 1944 | 1945 | 1946 | 1947 | 1948 |
|---|---|---|---|---|---|---|
| C. T. Thompson, President | $25,321.86 | $35,800.00 | $34,533.33 | [1] $45,108.37 | $86,600.00 | $60,000.00 |
| G. M. Hayward, Vice President | 9,951.26 | 20,696.92 | 22,830.19 | [1] 1,833.34 | | |
| C. A. Larbig, Secretary | 6,570.91 | 1,347.72 | | | | |
| J. T. Lockton, Treasurer | 5,864.13 | 6,047.49 | 6,545.85 | 7,522.78 | 10,502.78 | 11,222.78 |
| F. M. Goodwin, Vice President | | | 6,083.33 | 15,161.50 | 17,580.00 | 22,000.00 |
| R. E. Ballinger, Secretary | | 6,011.29 | 7,161.29 | 9,859.37 | 12,949.37 | 12,809.37 |
| Total officers' compensation | 47,708.16 | 69,903.42 | 77,153.99 | 78,485.36 | 127,632.15 | 106,032.15 |
| Sales | 4,843,452.94 | 6,355,907.39 | 5,978,359.98 | 6,697,191.68 | 8,333,494.69 | 8,749,992.96 |
| Gross profit | 1,056,078.44 | 1,290,061.58 | 1,201,903.45 | 1,329,456.85 | 1,763,225.40 | 1,989,386.02 |
| Net income | 480,807.04 | 563,682.43 | 462,907.10 | 489,962.32 | 771,563.24 | 773,575.42 |

| | 1949 | 1950 | 1951 | 1952 | 1953 |
|---|---|---|---|---|---|
| C. T. Thompson, President | $25,000.00 | $25,000.00 | $25,000.00 | $35,833.34 | $35,000.00 |
| F. M. Goodwin, Vice President | 23,978.13 | 21,978.13 | 24,728.13 | 25,478.13 | 24,978.13 |
| R. E. Ballinger, Secretary | 13,809.37 | 12,809.37 | 13,059.37 | 14,059.37 | 14,509.37 |
| J. T. Lockton, Treasurer | 11,222.78 | 10,722.78 | 10,722.78 | 11,872.78 | 10,822.78 |
| Total officers' compensation | 74,010.28 | 70,510.28 | 73,510.28 | 87,243.62 | 83,310.28 |
| Sales | 9,197,571.85 | 9,134,824.89 | 11,065,127.30 | 12,516,093.29 | 14,049,265.97 |
| Gross profit | 2,080,378.23 | 1,990,346.77 | 2,434,495.45 | 2,767,397.57 | 2,799,500.49 |
| Net income | 677,054.22 | 499,666.80 | 818,370.25 | 723,708.46 | 422,806.84 |

[1] In year ended Jan. 31, 1946, Thompson held title of chairman of the board and Hayward held title of president.

All bonuses paid by petitioner to its employees were determined solely by Thompson. The increase in petitioner's sales for the fiscal year ending January 31, 1947, was due primarily to substantial price increases in petitioner's products immediately following World War II.

Petitioner's capital stock, surplus, and amounts of dividends paid during the fiscal years 1942 through 1950 were as follows:

| Year ending January 31 | Capital stock | Surplus | Dividends paid |
|---|---|---|---|
| 1942 | $350,000 | $602,765.72 | $105,000.00 |
| 1943 | 350,000 | 721,154.42 | (1) |
| 1944 | 350,000 | 794,407.35 | 70,000.00 |
| 1945 | 350,000 | 872,417.84 | 35,000.00 |
| 1946 | 350,000 | 1,046,951.28 | 35,000.00 |
| 1947 | 350,000 | 1,395,294.90 | 70,000.00 |
| 1948 | 350,000 | 1,731,157.16 | 137,438.53 |
| 1949 | 350,000 | 2,051,132.34 | 105,000.00 |
| 1950 | 350,000 | 2,238,357.61 | 139,515.00 |

1 None.

Petitioner's excess profits tax net income for the fiscal year 1951 was $812,508.81 and its excess profits tax net income for the fiscal year 1952 was $722,884.37. Its excess profits tax credit, computed by means of the average earnings method and without giving effect to any asserted abnormality under section 433 (b) (9) of the 1939 Code, for the fiscal year 1951 was $663,021.82 and for the fiscal year 1952 it was $731,316.52. Petitioner's excess profits tax net income for the fiscal years 1947, 1948, 1949, and 1950, without giving effect to any asserted abnormality under section 433 (b) (9) of the 1939 Code, was $770,547.83, $754,407.22, $670,214.40, and $497,443.65, respectively.

OPINION.

The first issue is whether the deduction claimed by the petitioner for officers' compensation in the base period year ended January 31, 1947, entitles petitioner to certain adjustments within the meaning of section 433 (b) (9) and (10) of the 1939 Internal Revenue Code in computing its excess profits tax credit for the fiscal years 1951 and 1952. These sections provide in part that petitioner must establish that a "class of deductions [in fiscal 1947] exceeded 115 per centum of the average amount of deductions of such class for the four previous taxable years" and petitioner must also show that the increase in that class of deductions was "not a cause or a consequence of an increase in [its] gross income * * * in its base period or a decrease in the amount of some other deduction in its base period" (sec. 433 (b) (9) (C) (i)) and was "not a consequence of a change at any time in the type, manner of operation, size, or condition of [its] business." (Sec. 433 (b) (9) (C) (ii).)

At the outset we believe that the deduction for officers' compensation constitutes a "class of deductions" within the meaning of section 433 (b) (9). *McKay Machine Co.*, 28 T. C. 185; *National Biscuit Co.*, 29 T. C. 409; *Universal Optical Co.*, 11 T. C. 608; and *Mine & Smelter Supply Co.*, 10 T. C. 1179. Respondent makes the argument that the "class of deductions" contemplated by the section must be intrinsically abnormal for the taxpayer in the regular operation of a business, that is, a class which is nonrecurrent for the particular taxpayer. No authority is cited for this conclusion and a simple reading of the statute shows the disallowance provisions apply to any class. The statute reads in part: "If, * * * any class of deductions for the taxable year exceeded 115 per centum of the average amount of deductions of *such class* for the four previous taxable years * * * the deductions of such class shall * * * be disallowed in an amount equal to such excess." (Emphasis supplied.) Since the statute speaks of class deductions "for the four previous taxable years" it is obvious it reaches normal classes.

It is true that section 711 (b) (1) (J) of the World War II Excess Profits Tax Act made a distinction between normal and abnormal deductions. Abnormal deductions were disallowed in toto, while, in the use of normal deductions, only the excess over a certain percentage was disallowed. But this distinction was abandoned under the Korean War Excess Profits Tax Act, and instead, only the percentage requirement was kept. There is nothing in the legislative history to support respondent's argument and we cannot find anything in the statute itself that calls for such an interpretation.

Petitioner has the burden of establishing the negative fact that the increase in officers' compensation for the fiscal year 1947 was not a cause or consequence of an increase in its gross income in its base period or a decrease in said period of the amount of some other deduction. The base period years are 1946 to 1949. Sec. 435 (b). The issue on the sufficiency of petitioner's evidence to establish the fact that the increase in officers' compensation was not a cause or consequence of an increase in gross income is rather close but we have concluded from all of the evidence that petitioner satisfied its burden. Petitioner was entirely dominated by its president, who fixed his own compensation, and he testified he did this without relation to the gross income figure. He is somewhat supported by a study of the table showing officers' compensation included in our Findings of Fact. While it is true the gross income of petitioner increased in 1947 over 1946 and the president also increased his compensation in 1947 over 1946, it is also true the gross income figure increased in 1948 and the president's compensation decreased in that year. The gross income figure increased generally in the years following 1947 until, in 1949,

the last year of the base period, it was over $300,000 higher than in 1946. During these same years the president's compensation decreased from a high of $86,600 in 1947 to $25,000 in the year 1949. We think it fair to consider the relationship of the president's compensation to gross income for it is apparent his taking a high compensation in the year 1947 is what makes the deduction for officers' compensation exceed the 115 per cent in that year. But a comparison of the total for officers' compensation with the gross income figure for all of the years from the years 1946 to 1949 shows no definite relationship of gross income to compensation. There was some other evidence indicating the officers' compensation in the year 1947 was not related to gross income and on the basis of the whole record we are of the opinion that the increase in officers' compensation was not a cause or consequence of an increase in its gross income in said years. It is not argued that said increase was caused by a decrease in the amount of some other deduction and it is apparent it was not.

Petitioner here has also established that the increases in officers' compensation in fiscal 1947 were not due to a change at any time in the type, manner of operation, size, or condition of its business. At all times here material the petitioner remained an importer and distributor of chemicals. No new branches were opened during this period and its territories remained substantially the same. The evidence does show an increase in sales and gross income immediately after World War II but this resulted mostly from the price increases in chemicals due to the removal of price controls shortly after the war. *Mine & Smelter Supply Co., supra.*

Respondent, by an amendment filed after trial, raised the issue of an adjustment under section 452. The argument under this issue is that if the officers' compensation for fiscal 1947, because of the bonus paid by petitioner to its president and controlling stockholder, comes within section 433 (b) (9), then such bonus was unreasonable and an adjustment must be made under section 452 of the 1939 Internal Revenue Code for the deficiency in income tax and interest resulting from this adjustment. Section 452 provides for an adjustment where either the taxpayer or the respondent, in determining excess profits credit, treats an item in a manner inconsistent with the treatment of such item in the determination of prior income tax liability. It is evident that section 452 does not authorize an adjustment where the difference in the treatment of an item is occasioned solely by reason of an adjustment required by section 433 (b). Sec. 40.452–2 (d) 2, Regs. 130. It is also evident from the language of this section itself that the adjustment can be made only if the inconsistent position is maintained by the party, either the Commissioner or the taxpayer, who would be adversely affected by the adjustment. Sec. 452 (b) (2) ; sec. 40.452–1,

Regs. 130. Here, the petitioner has not maintained an inconsistent position within the meaning of section 452. It does not insist that the deduction for officers' compensation in the fiscal year 1947 was improperly claimed. It does not maintain that any portion of such compensation was unreasonable and therefore disallowable under section 433 (b) (9). Petitioner's only contention is that the officers' compensation for the fiscal year 1947 constituted a *class* of deductions within the meaning of section 433 (b) (9), that this class of deductions in the fiscal year 1947 exceeded 115 per cent of the average amount of deductions for such class for the previous 4 years, and that, consequently, the excess over 115 per cent should be disallowed in computing its excess profits credit. Nowhere does petitioner take an inconsistent position with respect to any item. Section 452 is not applicable to the facts of this case.

*Decision will be entered under Rule 50.*