MAX SOBEL WHOLESALE LIQUORS,
Petitioner–Appellee,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent–Appellant.

No. 78–2833.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 1980.

Decided Sept. 22, 1980.

Ernest J. Brown, Washington, D. C., argued for respondent–appellant; Hilbert P. Zarky, Los Angeles, Cal., Ernest J. Brown, Dept. of Justice, Lewis H. Ferguson, Washington, D. C., on brief.

Charles R. Breyer, Jeffry A. Bernstein, Jacobs, Sills & Coblentz, San Francisco, Cal., for petitioner–appellee.

Before CHOY and TANG, Circuit Judges, and REED,* District Judge.

CHOY, Circuit Judge:

Max Sobel Wholesale Liquors (taxpayer) secretly transferred, as an added consideration for sales, extra liquor to some of its customers in fiscal 1973 and 1974 in violation of California law providing for minimum prices. The Commissioner of Internal Revenue (Commissioner) asserted that I.R.C. § 162(c)(2) disallowed the inclusion of the value of the extra liquor in taxpayer's cost of goods sold; such disallowance would have increased taxpayer's gross and taxable income. The Tax Court rejected the Commissioner's assertion. 69 T.C. 477 (1977). We affirm.

## I. *Exclusion vs. Deduction*

For good or ill, tax law distinguishes between exclusions from gross income ("above the line" items) and deductions from gross income ("below the line" items). *See generally B. C. Cook & Sons v. Commissioner,* 65 T.C. 422 (1975), *aff'd,* 584 F.2d 53 (5th Cir. 1978). "Gross income," I.R.C. § 61, is determined by subtracting all "above the line" items from gross receipts. *See* Reg. § 1.61–3(a). The very definition of "gross income" has been thought to mandate the exclusion of certain amounts (*e. g.,* the cost

of goods sold) from that figure, even in the absence of specific statutory authority for such exclusion.

"Gross income" minus allowable deductions equals "taxable income." I.R.C. § 63. Deductions (*e. g.,* for advertising costs) are a matter of legislative grace and exist only by virtue of specific legislation. *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934). Congress is free to create, abolish, or limit deductions, I.R.C. § 162(a) allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Congress limited this deduction, however, by providing that

No deduction shall be allowed under [§ 162(a)] for any payment . . . made, directly or indirectly, to any person, if the payment constitutes an illegal bribe, illegal kickback, or other illegal payment under any law of the United States, or under any law of a State (but only if such State law is generally enforced), which subjects the payor to a criminal penalty or the loss of license or privilege to engage in a trade or business.

I.R.C. § 162(c)(2).

Clearly, § 162(c)(2) precludes taxpayer from claiming the value of the extra liquor as a business expense deductible under I.R.C. § 162(a).[1] However, the Tax Court has held in *Pittsburgh Milk Co. v. Commissioner,* 26 T.C. 707 (1956), and following cases that when, as an added consideration for a sale, a seller rebates part of his customer's purchase price or pays him cash from a separate account, the amount of the rebate is not a business expense, potentially deductible under § 162(a), but rather is an "above the line" adjustment of the selling price. Regardless of whether

---

* The Honorable Edward C. Reed, Jr., United States District Judge for the District of Nevada, sitting by designation.

1. The phrase "other illegal payment" in § 162(c)(2) includes every valuable transfer, including rebates and transfers of merchandise such as are involved here. California Business & Professions Code §§ 24756 and 24862, which

taxpayer's payments violated, were generally enforced; indeed, taxpayer's own license to do business was suspended for 15 days. It is irrelevant that the state law has recently been invalidated, *see California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980).

the rebate is legal, the seller is treated as if he had never received more than the net price (the difference between the list price and the rebate); the amount of the rebate is excluded from the seller's gross income. *See, e. g., Tri–State Beverage Distributors, Inc. v. Commissioner*, 27 T.C. 1026 (1957) (doctrine successfully invoked by Commissioner).

■ The *Pittsburgh Milk* doctrine has the obvious merit of reflecting economic reality. The seller would make no sale at the list price; only at the net price can he attract the customer. The net price is the true consideration, regardless of the parties' bookkeeping hypocrisies. The Tax Court, despite the passage of § 162(c)(2) and the Commissioner's recent withdrawal of his acquiescence, has correctly adhered to *Pittsburgh Milk* in the case at bar.[2]

There is no material difference between *Pittsburgh Milk*, where the price is adjusted by a cash rebate, and the present case, where the price is adjusted by the delivery of extra merchandise. Rather than directly reducing gross receipts, taxpayer's price–adjustment method results in a decrease in the value of closing inventory, which is accounted for as an increase in the cost of goods sold, which in turn is subtracted "above the line" from gross receipts to determine gross income. *See Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 530 n.9, 99 S.Ct. 773, 780 n.9, 58 L.Ed.2d 785 (1979). Only after this computation will tax accounting consider potential deductions, if any, from gross income. Therefore, if § 162(c)(2) operates only to disallow potential deductions, it is inapplicable to the present case.

## II. *Effect of § 162(c)(2) on Exclusions*

■ The question before us is whether § 162(c)(2) extends beyond the realm of deductions: whether Congress, in § 162(c)(2), changed the definition of gross income so as to make the cost of goods sold excludable only as Congress permits. We hold that Congress did not.

## A. *The Statute*

On its face, § 162(c)(2) seems only to disallow the deduction of certain business expenses that otherwise would be within § 162(a). The legislative history also speaks only of the disallowance of "deductions." Therefore, we interpret § 162(c)(2) to apply only in the netherworld of deductions, and not to have any effect in the "above the line" realm of cost of goods sold. "[I]n cases of doubt, a taxing statute must be construed most strongly in favor of the taxpayer and against the government. Tax statutes are not to be extended by implication beyond the clear import of the language used." *Greyhound Corp. v. United States*, 495 F.2d 863, 869 (9th Cir. 1974).

## B. *The Regulations*

■ Our conclusion fatally undercuts the Commissioner's attempts in Regs. §§ 1.61–3(a) and 1.471–3(d) to apply the disallowance rule of § 162(c)(2) to portions of the cost of goods sold. Despite the deference owed to tax regulations, *see National Muffler Dealers Assn. v. United States*, 440 U.S. 472, 476–77, 99 S.Ct. 1304, 1306–07, 59 L.Ed.2d 519 (1979), they cannot stand if unsupported by the underlying statute.

Reg. § 1.61–3(a) reads in pertinent part:

In a . . . merchandising . . . business, "gross income" means the total sales, less the cost of goods sold . . . . Gross income is determined without subtraction of . . . amounts which are of a type for which a deduction would be disallowed under section 162(c) . . . in the case of a business expense.

Reg. § 1.471–3 sets out the rules for the cost method of inventory accounting:

Cost means:

(a) In the case of merchandise on hand at the beginning of the taxable year, the inventory price of such goods.

(b) In the case of merchandise purchased since the beginning of the taxable

2. *Accord, Dixie Dairies Corp. v. Commissioner*, 74 T.C. No. 34 (1980); *Haas Bros., Inc. v. Commissioner*, 73 T.C. 1217 (1980).

year, the invoice price less trade or other discounts . . . . To this net invoice price should be added transportation or other necessary charges incurred in acquiring possession of the goods.

. . . .

(d) . . . Notwithstanding the other rules of this section, cost shall not include an amount which is of a type for which a deduction would be disallowed under section 162(c) . . . in the case of a business expense.

The Tax Court did not strike down the offending passages altogether, but (assuming their validity) limited their applicability to the category, that "may" exist, of "expenses of a dual character which may be chargeable either to overhead in the cost of goods sold or deducted as administrative or sales expense. . . . [e. g.,] a bribe given for the purpose of obtaining goods or for the purpose of expediting [their] delivery to the taxpayer." 69 T.C. at 485. We doubt the existence of such a category (see the final sentence of Reg. § 1.471–3(b)), but in any event hold that if the regulations purport to extend to the items in the present case, they are invalid to that extent.

### C. *Precedent*

This is the first case arising under the present § 162(c)(2). On appeal, however, the Commissioner has discovered cases arising under arguably analogous statutes. Three rather opaque wage-control cases offer some support for his argument that § 162(c)(2) should, despite its explicit limitation to deductions, be construed also to preclude illegal payments from providing any other kind of tax benefit.

Section 5(a) of the Act of October 2, 1942, ch. 578, 56 Stat. 765, 767, an amendment of the Emergency Price Control Act of 1942, gave the President authority to "prescribe the extent to which any wage or salary payment made in contravention of [wage-control] regulations shall be disregarded by the executive departments and other governmental agencies in determining the costs or expenses of any employer for the pur-

poses of any other law or regulation." The President immediately issued Executive Order 9250, 1942–2 C.B. 92, 93, commanding that excessive wage payments be disregarded "for the purpose of calculating deductions under the Revenue Laws of the United States." Under this authority, *Weather-Seal Manufacturing Co. v. Commissioner*, 16 T.C. 1312 (1951), *aff'd mem.*, 199 F.2d 376 (6th Cir. 1952), disallowed any tax benefit from wage payments which apparently otherwise would have been classifiable as components of the cost of goods sold.

Section 405(b) of the Defense Production Act of 1950, ch. 932, 64 Stat. 798, 807, gave the President similar authority; Economic Stabilization Agency General Order No. 15, § 4(a)(1), 17 Fed.Reg. 2994, 2995 (April 3, 1952), provided for the disallowance of such payments in "[c]alculating deductions or the basis for determining gain under the Revenue Laws of the United States." In short, said *Zehman v. Commissioner*, 27 T.C. 876, 878 (1957), *aff'd sub nom. Solon Decorating Co. v. Commissioner*, 253 F.2d 424 (6th Cir. 1958), this was a reenactment of the Emergency Price Control Act of 1942; therefore, on facts like those in *Weather–Seal*, the taxpayer's claimed exclusion was disallowed. The same result was reached in *Pedone v. United States*, 151 F.Supp. 288, 138 Ct.Cl. 233 (3–2 decision), *cert. denied*, 355 U.S. 829, 78 S.Ct. 40, 2 L.Ed.2d 42 (1957).

It was appropriate to construe these emergency measures broadly to achieve their pressing objectives. It should also be noted that all three cases suggested that because at least some wages and salaries were classifiable as potential business-expense deductions, the excessive wages in question could fairly be classified as "deductions" for the purposes of the statutes and orders, and disallowed. The holdings of the three cases just discussed must be confined to their particular facts.

### III. *Conclusion*

We affirm the holding of the Tax Court that I.R.C. § 162(c)(2) applies only to poten-

tial deductions, and that price adjustments consisting of the delivery of extra merchandise are exclusions from gross income rather than potential deductions. Opinions of the Tax Court reflect "that degree of special expertise which Congress has intended to provide in that tribunal." *Sibla v. Commissioner*, 611 F.2d 1260, 1262 (9th Cir. 1980). Therefore, we "should not overrule that body, unless some unmistakable question of law mandates such a decision." *Id.*

AFFIRMED.