T.C. Memo. 2000-345

UNITED STATES TAX COURT

DAVID E. AND REBECCA NEWMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18599-98.                    Filed November 8, 2000.

<u>Jeffrey M. Weiss</u>, for petitioners.

<u>Wendy Abkin</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  In a notice of deficiency addressed to petitioners, respondent determined deficiencies in income tax and penalties as follows:

| Year | Deficiency | Penalty Section 6662(a) |
|------|------------|-------------------------|
| 1991 | $92,042    | $18,408                 |
| 1992 | 47,648     | 9,530                   |

After concessions,[1] the issues for our consideration are: (1) Whether petitioners are entitled to offset gross proceeds reported on their 1991 and 1992 Schedules C, Profit or Loss From Business, by the amounts of $250,000 and $140,000, respectively, that they claimed as cost of goods sold; and (2) whether petitioners are liable for the accuracy-related penalty under section 6662(a) for the 1991 and 1992 tax years.[2]

## FINDINGS OF FACT

The parties' stipulation of facts and the exhibits are incorporated herein by this reference.

Petitioners resided at 455 Irwin Street, #201, San Francisco, California, at the time their petition was filed. David E. Newman (petitioner) is an entrepreneur who has been involved in a wide range of business opportunities for the

---

[1] The parties filed a stipulation of settled issues, whereby petitioners conceded: (1) They are not entitled to Schedule C secretarial expenses in the amount of $5,439 for the 1991 tax year; (2) they are not entitled to Schedule C meals and entertainment expenses in the amounts of $73,554 and $12,122 for the 1991 and 1992 tax years, respectively; (3) they are not entitled to Schedule C charity expenses in the amount of $8,489 for the 1991 tax year; and (4) $46,255 of their net operating loss carryback from the 1993 tax year to the 1991 tax year is not allowable. The parties also agree that the adjustments in the notice of deficiency to petitioners' 1992 self-employment tax deduction, 1992 itemized deductions, and 1991 and 1992 deductions for exemptions are computational adjustments and will be determined after the remaining issues have been resolved.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable periods under consideration, and all Rule references are to the Tax Court Rules of Practice and Procedure.

purpose of securing both short- and long-term returns on his investments. During the years at issue, petitioner was engaged in a business activity with Peter Lee (Lee) involving the purchase and resale of computer chips.

In December 1990, petitioner and Stanley M. Friedman (Friedman) executed a joint venture agreement with Lee setting forth the terms and conditions for the purchase and resale of computer chips. According to the joint venture agreement, petitioner and Friedman were to invest approximately $1 million and $2 million, respectively, with Lee for the purchase and resale of computer chips. Although petitioner and Lee formalized their arrangement with a joint venture agreement, most of petitioner's transactions with Lee were done on a handshake.

During the years at issue, petitioner advanced funds to Lee in order to provide him with the necessary capital to buy the computer chips. Lee would use these funds to purchase computer chips and then sell the chips to third parties. After the chips were acquired by Lee and sold to third parties, Lee would return the funds advanced by petitioner, and pay an additional specified rate of return on those advanced funds. This specified return represented some portion of Lee's profit from the resale of the chips. Lee also paid petitioner a commission for referring other investors to him.

While petitioner sometimes went to Lee's office to view the computer chips that Lee had purchased, petitioner never took possession of the chips, did not maintain any inventory or supply of computer chips, did not know the sales price of the computer chips, and did not maintain any records relating to the purchase or sale of the computer chips. The only records petitioner maintained were of the amount of funds that he advanced to Lee and the amount of the return that Lee owed him on those advances.

During 1991, petitioner received a return on his advances and commissions from Lee in the amount of $799,550. During 1992, petitioner received a return on his advances from Lee in the amount of $340,152. As of December 31, 1991, Lee owed petitioner expected returns of $250,000 on funds that petitioner had advanced to him. Likewise, as of December 31, 1992, Lee owed petitioner expected returns of $140,000 on funds that petitioner had advanced to him.

For the 1991 tax year, petitioners reported $799,550 as gross receipts and $250,000 as costs of goods sold on the Schedule C attached to their tax return. For the 1992 tax year, petitioners reported $340,152 as gross receipts and $140,000 as costs of goods sold on the Schedule C attached to their return. The gross receipts figures shown on petitioners' 1991 and 1992 Schedules C do not reflect the sales of the computer chips by Lee to third parties. Rather, the gross receipts represent

- 5 -

petitioner's portion of the profit that was made on the purchase and resale of the computer chips.

In the notice of deficiency issued to petitioners, respondent disallowed the Schedule C cost of goods sold for the 1991 and 1992 tax years and determined penalties for negligence.

OPINION

We must decide whether petitioners (1) are entitled to claim cost of goods sold in the amounts of $250,000 and $140,000 on their Schedules C for the 1991 and 1992 tax years, respectively, and (2) are liable for the accuracy-related penalty under section 6662(a) for the 1991 and 1992 tax years.

The cost of goods purchased for resale in a taxpayer's business is subtracted from gross receipts to compute gross income. See sec. 1.61-3(a), Income Tax Regs. This Court has consistently held that the cost of goods sold is not a deduction (within the meaning of section 162(a)), but is subtracted from gross receipts in the determination of a taxpayer's gross income. See Max Sobel Wholesale Liquors v. Commissioner, 69 T.C. 477 (1977), affd. 630 F.2d 670 (9th Cir. 1980); secs. 1.162-1(a), Income Tax Regs. Taxpayers must show their entitlement to the amount of cost of goods sold claimed. See Rule 142(a). Taxpayers must also keep sufficient records to substantiate the cost of goods sold. See sec. 6001; Wright v. Commissioner, T.C. Memo. 1993-27.

Petitioner claims that he was involved in the computer chip sales business, and that he is entitled to reduce his Schedule C gross receipts by the cost of the computer chips. As an initial matter, we must determine whether petitioner was in the business of purchasing and reselling computer chips, or simply providing Lee with a source of capital and earning a return on his investment.

While the parties agree that petitioner and Lee had a business arrangement concerning the purchase and sale of computer chips, it is apparent that petitioner's role in the arrangement was limited to that of an investor. Lee had contacts with manufacturers of computer chips and could obtain a supply of these chips to market to purchasers. He did not, however, have the capital necessary to acquire the chips from the manufacturers. As a result, petitioner advanced funds to Lee, who, after purchasing the computer chips, returned the funds to petitioner with some specified rate of return. Petitioner did not take possession of the chips nor maintain any sort of inventory. In addition, he was not involved in the actual sales of the computer chips. Petitioner did not know the sales price of the computer chips or how much money Lee was making on the sales. The only record petitioner maintained regarding this arrangement was the amount of money advanced to Lee and the amount of return he was to receive on the advanced funds. In

addition, the joint venture agreement between petitioner and Lee referred to the arrangement as an "investment".

Furthermore, petitioners' Schedules C are inconsistent with the contention that petitioner was in the business of selling computer chips. Petitioners' Schedules C do not reflect the gross receipts from the sale of the computer chips. Rather, they merely reflect a portion of the profit that was realized by Lee upon the resale of the computer chips and subsequently paid to petitioner as a return on his investment. Accordingly, we find that petitioner was merely a source of capital for Lee, and was not a merchant with respect to the computer chips. Therefore, petitioner cannot treat the $250,000 and $140,000 amounts as costs of goods sold in 1991 and 1992, respectively.

We note that even if we were willing to reach the conclusion that petitioner was engaged in the sale of computer chips and acquired chips for resale in 1991 and 1992, petitioners have failed to substantiate the costs of good sold and we are unable to make an estimate. Section 6001 requires that a taxpayer liable for any tax shall maintain such records, render such statements, make such returns, and comply with such regulations as the Secretary may from time to time prescribe. Petitioners admit that "No testimony or other evidence has been presented as to any specific costs," yet claim that we can make a reasonable estimate of petitioners' cost of goods sold based on Cohan v.

Commissioner, 39 F.2d 540 (2d Cir. 1930). Under Cohan, in the event that a taxpayer establishes that he or she has incurred a deductible expense but is unable to substantiate the precise amount of the expense, we may estimate the amount of the deductible expense. We cannot, however, estimate deductible expenses unless the taxpayer presents evidence sufficient to provide some rational basis upon which estimates may be made. See Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Petitioner kept no documentation regarding any expenses or costs relating to the computer chip sales. Likewise, petitioner has no documentation regarding gross sales of the computer chips.[3] As a result, petitioners ask us to back into a cost of sales number based on petitioner's testimony that Lee's return on the computer chip sales was approximately double the return to petitioner. Thus, to quote petitioners, "Since * * * [petitioner had] a 6% return, Lee's return would be about 12%, effectively translating into a cost of sales of 72%." This information simply does not provide us with the detail needed to make an estimate. Accordingly, even if we were to conclude that petitioners could claim cost of goods sold, we would be unable to determine the proper amount.

_____

[3] During trial, petitioner testified that he requested his assistant to keep records of every deal with Lee, but later discovered that whatever records were kept were discarded by the assistant when he was caught stealing trade secrets from petitioner in regard to another venture.

Petitioners contend as an alternative argument that if they are not allowed to treat the $250,000 and $140,000 as cost of goods sold in 1991 and 1992, respectively, they should either be allowed a business expense deduction under section 162(a) or a business bad debt deduction under section 166(a).  Respondent objects to these arguments because petitioners raised them for the first time in their opening brief.[4]  While it is true that respondent had no opportunity to explore facts regarding these theories with petitioner during his testimony, given the fact that they do not hold merit and can be quickly addressed, we shall consider petitioners' alternative arguments.

With regard to petitioners' assertion that the claimed cost of goods sold should be allowed as an ordinary and necessary business expense under section 162(a), petitioners have failed to establish that the amounts reported as cost of goods sold are ordinary or necessary business expenses deductible under section 162.  Indeed, the evidence supports a finding that the $250,000 and $140,000 that petitioners claim are deductible represented simply the expected return on funds that petitioner advanced as working capital to Lee.  As such, the amounts were more akin to a

---

[4] A party may rely upon a theory only if it provided the opposing party with fair warning that it intended to make an argument based upon that theory.  Pagel, Inc. v. Commissioner, 91 T.C. 200, 211 (1988), affd. 905 F.2d 1190 (8th Cir. 1990).

receivable than an expense.  Accordingly, petitioner is not entitled to a deduction for these amounts under section 162(a).

With respect to the business bad debt claim, section 166(a) allows a deduction for "any debt which becomes worthless within the taxable year."  Under section 1.166-1(c), Income Tax Regs., the debt must be "bona fide", defined as "a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money."  Furthermore, taxpayers must exhaust the usual and reasonable means of collection before they are entitled to a deduction.  See C.S. Webb, Inc. v. Commissioner, 1 B.T.A. 269 (1925).  When efforts to collect become futile, the deduction is allowed.  See  Alexander v. Commissioner, 26 T.C. 856 (1956).

Petitioners' evidence concerning their entitlement to a business bad debt deduction consisted of petitioner's testimony that (1) Lee owed petitioner "over a million dollars," and (2) Lee filed for bankruptcy in "either December of '92 or January of '93."  Aside from these two statements, petitioners presented no evidence to establish their entitlement to a business bad debt deduction under section 166(a).  Petitioners failed to show that there was a bona fide debt that became worthless during the years in issue, or that they attempted to collect any such debt from Lee.  Accordingly, they are not entitled to a business bad debt deduction under section 166(a).

We now must decide whether petitioners are liable for the accuracy-related penalty under section 6662(a).  Respondent, for both of the taxable years, determined an accuracy-related penalty, based on negligence, under section 6662(a).  That section imposes an addition to tax in the amount of 20 percent of any portion of the underpayment attributable to negligence or the disregard of rules or regulations.  See sec. 6662(a) and (b)(1).  Petitioners must show that respondent's determination is erroneous.  See Rule 142(a).

The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the tax laws, and the term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  Negligence has also been defined as a lack of due care or failure to do what a reasonable person would do under the circumstances.  See Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), affg. 92 T.C. 1 (1989); Neely v. Commissioner, 85 T.C. 934, 947-948 (1985).  To avoid this penalty, petitioners must show that their actions were reasonable and not careless, reckless, or made with intentional disregard of rules or regulations.  See Delaney v. Commissioner, 743 F.2d 670 (9th Cir. 1984), affg. T.C. Memo. 1982-666.  Taxpayers are expected to maintain adequate records, and failure to do so may constitute negligence and a disregard of rules or regulations.  See sec. 6001.

Petitioners have failed to offer any evidence to suggest that they acted with reasonable cause and good faith with respect to their reporting of the purported cost of goods sold. Petitioner contends that he employed a full time assistant for the purpose of keeping records of his various business activities. Petitioner testified that he requested that his assistant keep records of every deal with Lee, but later discovered that the records had been discarded. Petitioners contend that "While petitioner was unable to produce any of the records that were to be kept by his assistant through no fault of his own, his record keeping attempts in this regard were not unreasonable." We disagree. Petitioners have failed to show that they exercised ordinary care and business prudence in keeping records necessary to comply with the tax laws. Petitioner's uncorroborated, self-serving testimony simply fails to convince us that his record keeping attempts were reasonable, and his attempt to shift the blame to his assistant is equally unconvincing. Either petitioners were not engaged in the computer chip sales business, in which case they had no basis for claiming cost of goods sold, or they utterly failed to maintain any records to support the computer chip sales business and the costs incurred in it. To the extent that records do exist, they do not support petitioner's claim that he was in the computer chip sales business or that he had cost of goods sold.

As such, we find that petitioners failed to make any reasonable attempt to comply with the tax laws and carelessly disregarded rules and regulations relating to the proper reporting of items and record keeping.  Accordingly, we sustain respondent's determination and hold that petitioners are liable for the section 6662(a) accuracy-related penalty for the 1991 and 1992 tax years.

We have considered all other arguments of the parties, and to the extent not addressed herein, we find them to be either meritless or irrelevant.

To reflect the foregoing and concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.