**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PATIENTS MUTUAL ASSISTANCE COLLECTIVE CORPORATION, DBA Harborside Health Center, *Petitioner-Appellant*, v. COMMISSIONER OF INTERNAL REVENUE, *Respondent-Appellee.* | No. 19-73078 Tax Ct. Nos. 29212-11 30851-12 14776-14 OPINION |

Appeal from a Decision of the
United States Tax Court

Argued and Submitted February 9, 2021
San Francisco, California

Filed April 22, 2021

Before: Andrew D. Hurwitz and Daniel A. Bress, Circuit
Judges, and Clifton L. Corker,[*] District Judge.

Opinion by Judge Bress

---

[*] The Honorable Clifton L. Corker, United States District Judge for
the Eastern District of Tennessee, sitting by designation.

**SUMMARY**[**]

**Tax**

The panel affirmed the Tax Court's decision on a petition for redetermination of federal income tax deficiencies that turned on whether a cannabis dispensary that purchases the marijuana it resells and values its inventory using the cost method of accounting must account for its inventory cost in accordance with Treasury Regulation § 1.471-3(b).

Patients Mutual Assistance Collective Corporation, dba Harborside Health Center ("Harborside"), is one of the largest marijuana dispensaries in the country. For the years at issue, Harborside was a not-for-profit corporation and medicinal cannabis collective that operated a retail cannabis dispensary under California state law. Harborside claimed tens of millions of dollars in exclusions. The Commissioner of Internal Revenue disallowed nearly all of them, then issued notices of deficiency. On a petition for redetermination of the deficiencies, the Tax Court ruled in favor of the Commissioner, and this appeal followed.

Most corporations can claim deductions for "ordinary and necessary expenses" that are "paid or incurred during the taxable year in carrying on any trade or business." I.R.C. § 162(a). However, otherwise allowed deductions are not available to taxpayers who engage in certain activities that Congress regards as unlawful, I.R.C. § 280E, including trafficking in controlled substances like marijuana. The panel first declined to consider the constitutional claim, not

___

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

raised in the Tax Court, that § 280E violates the Sixteenth Amendment.

Harborside next argued that some of its expenditures, even if they cannot be deducted under § 280E, can be excluded from income as part of its inventory cost under general inventory tax accounting rules. Rejecting Harborside's arguments that would have made more of its costs excludible for tax purposes, the panel held that the Tax Court did not err in concluding that Harborside's inventory cost is determined by Treas. Reg. § 1.471-3(b), which applies to a purchaser and reseller of the products it sells.

The panel declined to consider Harborside's argument, not raised before the Tax Court, that the Tax Court should have allowed at least some of Harborside's claimed exclusions as "necessary charges incurred in acquiring possession of the goods" under Treas. Reg. § 1.471-3(b). The panel therefore expressed no opinion on whether any of Harborside's claimed exclusions may have been properly regarded as inventory costs under § 1.471-3(b), nor did it address arguments made by amici curiae that Harborside did not advance on appeal.

## COUNSEL

James B. Mann (argued), Brooklyn, New York, for Petitioner-Appellant.

Nathaniel S. Pollock (argued), Francesca Ugolini, and Michael J. Haungs, Attorneys; T. Joshua Wu, Deputy Assistant Attorney General; Richard E. Zuckerman, Principal Deputy Assistant Attorney General; Tax Division, United States Department of Justice, Washington, D.C.; for Respondent-Appellee.

Charles C. Sipos and Lauren Watts Staniar, Perkins Coie LLP, Seattle, Washington; Barak Cohen and Tre A. Holloway, Perkins Coie LLP, Washington, D.C.; for Amicus Curiae National Cannabis Industry Association.

Jennifer E. Benda, Hall Estill Hardwick Gable Golden & Nelson P.C., Denver, Colorado, for Amici Curiae Marijuana Industry Group and Cannabis Trade Federation Action.

**OPINION**

BRESS, Circuit Judge:

On its face, this tax case presents the technical issue whether a cannabis dispensary that purchases the marijuana it resells and that values its inventory using the cost method must account for its inventory cost in accordance with section 1.471-3(b) of the Treasury Regulations. But at its core, this dispute reflects the latest attempt by a medical marijuana retailer to ameliorate the significant tax consequences Congress has prescribed for businesses that Congress regards as trafficking in controlled substances. Under federal law, those prohibited substances include marijuana, even though some states have more recently legalized its sale. This disharmony between federal and state law produces the multi-million-dollar tax controversy before us. Ultimately, we hold that the taxpayer's arguments either are without merit or were not preserved for our review. We therefore affirm the Tax Court.

I

The taxpayer is Patients Mutual Assistance Collective Corporation, one of the largest marijuana dispensaries in the United States. It is a C corporation under federal tax law that

does business as Harborside Health Center.  We refer to it as "Harborside."  This appeal concerns Harborside's corporate income tax liabilities for its tax years ending July 31, 2007 through July 31, 2012.  To understand Harborside's arguments, it is necessary to have some understanding of its business.

Harborside operates a retail cannabis dispensary.  For the years at issue, Harborside was a not-for-profit corporation and medicinal cannabis collective operating under California laws governing medical marijuana operations. *See* Cal. Health & Safety Code §§ 11362.765(a), 11362.768. Consistent with California law, Harborside sold products only to individuals who possessed a physician's written recommendation for medical marijuana.  *See id.* § 11362.5(d).  Prospective members also had to sign a cultivation agreement permitting other Harborside members to grow marijuana on their behalf as part of the Harborside collective.

Harborside sold several categories of products, including "buds," or cannabis flowers.  Harborside purchased buds from its patients-growers and did not grow any itself. Would-be sellers brought buds to Harborside's purchasing office, where a Harborside employee would inspect and test the buds for quality.  If the buds were acceptable, the employee negotiated a purchase price.  Once Harborside purchased the buds, it stored them in a secure vault and sent a sample for third-party laboratory testing.  If the results were satisfactory, employees would reinspect, trim, weigh, package, and label the buds in preparation for resale.

Harborside also purchased from nurseries marijuana "clones," i.e., "cuttings from a female cannabis plant that can be transplanted and used to cultivate marijuana."  After acquiring clones, Harborside stored, cared for, and

repackaged them before sale. Additionally, Harborside purchased and resold other marijuana-containing products, such as extracts and oils, which it purchased from other marijuana collectives, as well as non-marijuana products such as branded shirts and various marijuana-related paraphernalia. As a C corporation, Harborside pays corporate income tax on its "taxable income." I.R.C. § 11(a); *see also id.* § 1361(a)(2) (defining "C corporation").[1] Taxable income is determined through a multi-step process. A taxpayer first computes its "gross income." I.R.C. § 63(a). For a "merchandising" business such as Harborside, gross income includes the business's "total sales, less the cost of goods sold." Treas. Reg. § 1.61-3(a). That "cost" is said to be "excluded" from the taxpayer's income. *See Max Sobel Wholesale Liquors v. Comm'r*, 630 F.2d 670, 671 (9th Cir. 1980); *see also* Treas. Reg. § 1.162-1(a) (providing that "[t]he cost of goods purchased for resale" is treated as an exclusion from gross receipts).

Once a taxpayer has calculated its gross income, it subtracts any "deductions," such as ordinary and necessary business expenses, to which it is entitled. I.R.C. §§ 63(a), 161; *see, e.g., id.* § 162(a). The remaining amount is the taxpayer's "taxable income." *Id.* § 63(a). The regulations further provide that no item shall be treated as a deductible business expense "to the extent that it is used by the taxpayer in computing the cost of property included in its inventory,"

---

[1] Unless otherwise specified, all statutory and regulatory references are to the Internal Revenue Code or the Treasury Regulations, respectively codified as Title 26 of the United States Code and Title 26 of the Code of Federal Regulations.

because in that case the item is properly treated as an exclusion.  Treas. Reg. § 1.162-1(a).

A stylized example may be helpful to show how these concepts work in practice.  If a corporation purchased 100 domino sets for $6 each and resold them for $8 each, its gross sales would be $800.  It would then *exclude* cost of goods sold of $600, resulting in gross income of $200.  If the corporation also paid wages of $50 and rent of $25, it would seek to *deduct* those expenses under section 162(a), resulting in taxable income of $125.

The tax consequences are markedly different, however, if one is in the business of selling marijuana.  Most corporations can claim deductions for "ordinary and necessary expenses," such as employee salaries, rent, and license fees, "paid or incurred during the taxable year in carrying on any trade or business."  I.R.C. § 162(a).  But taxpayers may not take the otherwise allowed deductions when they engage in certain activities that Congress regards as unlawful.  *See, e.g.*, *Max Sobel*, 630 F.2d at 671.  That includes trafficking in controlled substances.

Section 280E is the relevant provision, and it states:

> No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law or the law of any State in which such trade or business is conducted.

I.R.C. § 280E.   Under federal law, marijuana is such a controlled substance.  *See* 21 U.S.C. § 812(c), sch. I(c)(10); 21 C.F.R. § 1308.11(d)(23); *Olive v. Comm'r*, 792 F.3d 1146, 1148 (9th Cir. 2015).

Harborside concedes it is subject to section 280E. Nevertheless, on its tax returns for the years at issue, Harborside claimed tens of millions of dollars in exclusions for cost of goods sold and business expense deductions.  The Commissioner of Internal Revenue disallowed nearly all those exclusions and deductions and issued Harborside notices of deficiency showing over $29 million in tax deficiencies for those years.  Harborside petitioned the Tax Court for redetermination of the deficiencies.   After Harborside provided additional substantiation of its costs, the Commissioner agreed that amounts Harborside paid its suppliers to purchase goods were excludible.   But he continued to deny Harborside's other claimed exclusions and all its claimed deductions.

After a three-day trial, the Tax Court ruled in favor of the Commissioner.  *Patients Mut. Assistance Collective Corp. v. Comm'r*, 151 T.C. 176 (2018).  That decision addressed a range of issues, many of which Harborside does not raise on appeal.  The parties then agreed to stipulated decisions under Tax Court Rule of Practice and Procedure 155 that identified approximately $11 million in agreed-upon deficiencies. According to the government, roughly $1 million of that amount corresponds to the disallowed exclusions, with the remainder due to the denied deductions.

This timely appeal followed.  We have jurisdiction to review the Tax Court's decisions under I.R.C. § 7482.

II

On appeal, Harborside's strategy is twofold: take out section 280E as unconstitutional under the Sixteenth Amendment and, if that fails, seek a more favorable ruling on its exclusions, so that some of what it cannot deduct under section 280E might instead be treated as cost of goods sold excludible from gross receipts.  We conclude that Harborside's various arguments must be rejected.

A

We begin with its constitutional challenge.  In recent years, cannabis businesses have tried to secure rulings invalidating section 280E as unconstitutional.  These efforts have not been successful.  The Tax Court recently rejected the argument that section 280E violates the Eighth Amendment's Excessive Fines Clause.  *N. Cal. Small Bus. Assistants Inc. v. Comm'r*, 153 T.C. 65, 72 (2019) (reviewed opinion).  And the Tenth Circuit recently upheld section 280E against a Sixteenth Amendment challenge.  *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1201 (10th Cir. 2018).

Reprising an argument similar to the one the Tenth Circuit turned down, Harborside argues that the corporate income tax, as modified by section 280E, is a "direct tax" that taxes more than "incomes," in violation of the Sixteenth Amendment.  The most immediate problem, however, is that Harborside did not raise this constitutional challenge in the Tax Court.

Although Harborside did mention the Sixteenth Amendment in its Tax Court briefing, it did so only as part of an unrelated constitutional avoidance argument. Specifically, Harborside argued that the Commissioner's

denial of exclusions under the uniform capitalization, or UNICAP, rules of section 263A could render those rules unconstitutional given that section 280E also disallows deductions for those amounts.  Before this court, however, Harborside explicitly abandoned its section 263A argument, and it points to no other occasion when it raised the Sixteenth Amendment before the Tax Court.  Nor did the Tax Court in its extensive opinion address the Sixteenth Amendment argument that Harborside asserts here.

"Absent exceptional circumstances, this court will not consider an argument that was not first raised in the Tax Court." *Sparkman v. Comm'r*, 509 F.3d 1149, 1158 (9th Cir. 2007).  In a previous case challenging section 280E on constitutional grounds, we declined to consider the argument because the taxpayer had not raised its challenge in the Tax Court.  *See Canna Care, Inc. v. Comm'r*, 694 F. App'x 570, 571 (9th Cir. 2017).  Harborside provides no basis to treat this case any differently.  We therefore decline to consider Harborside's constitutional claim.

B

1

But just because Harborside is unentitled to deductions does not necessarily mean it cannot take exclusions for some of the amounts at issue.  Section 280E does not purport to deny to those taxpayers within its scope the ability to seek exclusions that are available to other businesses.  *Patients Mutual*, 151 T.C. at 204; *Alterman v. Comm'r*, 115 T.C.M. (CCH) 1452, 1460 (2018); *Olive v. Comm'r*, 139 T.C 19, 32, 38 (2012).  Harborside therefore argues that some of its expenditures, if they cannot be deducted, are actually part of its inventory cost under the general inventory tax accounting rules of section 471.

We pause to note the peculiarity of Harborside's position, which is a function of the world that section 280E creates. As the Tax Court explained, all else being equal, taxpayers generally prefer deductions over exclusions. *Patients Mutual*, 151 T.C. at 205 & n.23, 207. This is because a taxpayer generally can avail itself of the benefit of a deduction—decreased taxable income, and thus lowered taxes—in the same tax year in which it paid or incurred the corresponding amount. *Id.* at 205; *see, e.g.*, I.R.C. § 461(a). In contrast, a merchandising taxpayer typically receives the tax benefit from an exclusion in the year in which it sells (or otherwise disposes of) the product associated with that exclusion (which may be years into the future). *Patients Mutual*, 151 T.C. at 205; *see, e.g.*, I.R.C. § 451(a).[2] But although exclusions generally are not as good as deductions, they are better than nothing. So contrary to taxpayers' usual preferences, and in an evident attempt to alleviate the effect of section 280E, Harborside takes the otherwise sub-optimal position that various expenditures it incurred in the course of purchasing and processing the marijuana it resold are in fact

---

[2] Taxpayers engaged in merchandising businesses often are subject to the UNICAP rules under section 263A, under which they must capitalize the costs of inventory acquired for resale, including certain "indirect costs ... which are allocable to" the inventory. I.R.C. § 263A(a)(2)(B); Treas. Reg. § 1.263A-1(c)(1). Taxpayers subject to section 263A would recover those costs as they sell or otherwise dispose of items in their inventories. *See Mertens Law of Federal Income Taxation* § 16.41, Westlaw (Mar. 2021 Update). However, section 263A expressly prohibits the capitalization of "[a]ny cost which (but for [the UNICAP rules]) may not be taken into account in computing taxable income for any taxable year." Treas. Reg. § 1.263A-1(c)(2); *see also* I.R.C. § 263A(a) (flush language). In other words, if a cost is not deductible, it cannot be capitalized under section 263A. On that basis, the Tax Court determined that the UNICAP rules were inapplicable to Harborside, *Patients Mutual*, 151 T.C. at 209, a determination that Harborside does not dispute on appeal.

excludible costs. These expenditures total over $7 million and include, for instance, employee compensation relating to the negotiation of bud purchases and the cost of laboratory testing of marijuana. Because Harborside is a merchandising business that must maintain an inventory, resolving this issue requires determining which inventory tax accounting provisions apply. In other words, we are tasked with resolving the valuation rules Harborside must use to determine the expenditures allocable to Harborside's cost of goods sold. We know those amounts include the purchase prices Harborside paid to buy marijuana. No one disputes that. But are any other items included as well? This question is a legal one involving the interpretation of the Internal Revenue Code and the Treasury Regulations, and our review therefore is de novo. *See Estate of Saunders v. Comm'r*, 745 F.3d 953, 957 (9th Cir. 2014). "Although a presumption exists that the Tax Court correctly applied the law, no special deference is given to the Tax Court's decisions." *Knudsen v. Comm'r*, 793 F.3d 1030, 1033 (9th Cir. 2015) (quotations omitted).

To answer the question presented, we begin with the Code's notion of inventory. Inventory generally refers to the goods owned by the taxpayer that are intended for sale to purchasers or that will physically become part of the product sold to purchasers. *See* Treas. Reg. § 1.471-1. A winery, for instance, would include in its inventory not only the grapes it purchases to make wine, but also the bottles, corks, and labels it uses to package that wine for sale. *See* Internal Revenue Serv., *The Wine Industry Audit Technique Guide* 21 (Mar. 2011).

Section 471 prescribes that whenever a taxpayer is required to maintain an inventory, such inventory "shall be taken by such taxpayer on such basis as the Secretary [of the

Treasury or his delegate] may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income." I.R.C. § 471(a); *see id.* § 7701(a)(11)(B). In *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522 (1978), the Supreme Court recognized that the second test—the clear reflection of income requirement—is "paramount," emphasizing that the Treasury Regulations "state[] categorically that '*no* method of accounting is acceptable unless, in the opinion of the Commissioner, it clearly reflects income.'" *Id.* at 540 (quoting Treas. Reg. § 1.446-1(a)(2)). Thus, "the Code and Regulations give the Commissioner broad discretion to set aside the taxpayer's method if, 'in [his] opinion,' it does not reflect income clearly." *Id.* (alteration in original).

Under the authority of section 471(a), the Internal Revenue Service has promulgated sections 1.471-1 through 1.471-11 of the Treasury Regulations, which contain detailed rules governing how taxpayers must account for their inventories, including valuation methods. *See Thor Power Tool*, 439 U.S. at 532–33. Under these rules, taxpayers generally calculate the value of inventory using one of two methods: "cost" or "cost or market, whichever is lower." Treas. Reg. § 1.471-2(c). Regulations for each method are provided in sections 1.471-3 and 1.471-4, respectively. A taxpayer electing to use the "cost" method therefore must apply the definition of "cost" contained in section 1.471-3. *See id.* § 1.471-2(b).

Under section 1.471-3, the definition of "cost" is keyed to whether a taxpayer "purchased" or "produced" a given product. *Id.* § 1.471-3(b)–(c). For a taxpayer that "produced" the product it sells, "cost" includes not only "the cost of raw materials and supplies entering into or consumed

in connection with the product," but also "expenditures for direct labor" and "indirect production costs incident to and necessary for the production of the particular article." *Id.* § 1.471-3(c). In contrast, taxpayers reselling products that they "purchased" are entitled to include as cost only "the invoice price," less certain discounts not relevant here, as well as "transportation or other necessary charges incurred in acquiring possession of the goods." *Id.* § 1.471-3(b).

Harborside does not dispute that as a merchandising business, it must maintain its inventory in accordance with the regulatory scheme of section 471. *See* Treas. Reg. §§ 1.471-1, 1.471-2(b). Nor does Harborside dispute that it elected to use the "cost" method to account for its inventory. *Id.* §§ 1.471-2(c), 1.471-3. Harborside does dispute, however, which cost-method rules it is subject to for the years at issue. Before the Tax Court, Harborside argued that it had "produced" the products it sold and therefore should calculate the corresponding costs under section 1.471-3(c). The Tax Court rejected this argument and found that Harborside had "purchased," not "produced," the products it resold. *Patients Mutual*, 151 T.C. at 210–13. Harborside does not contest that determination on appeal. It therefore follows that Harborside's excludible cost relating to those products must be determined under section 1.471-3(b), applicable to purchasers, i.e., resellers. *See* 151 T.C. at 213.

2

Resisting this straightforward conclusion, Harborside proffers various arguments as to why section 1.471-3(b) supposedly does not apply to it. In essence, section 1.471-3(b) defines (and thereby limits) the types of outlays associated with purchased merchandise that a taxpayer can treat as inventory costs. Harborside wants to dump more such expenditures into its excludible costs than section

1.471-3(b) would otherwise allow, largely because section 280E does not allow corresponding deductions (and because section 263A's UNICAP rules are therefore inapplicable). Hence Harborside argues it is outside section 1.471-3(b) altogether.  But Harborside's arguments are not persuasive.

*First*, Harborside asserts that it satisfied the general requirements of section 471—the "best accounting practice" and "clear reflection of income" rules—when it included the disputed exclusions within its inventory cost.  *See* I.R.C. § 471(a); Treas. Reg. § 1.471-2(a).  Harborside argues that because the Commissioner does not directly assert that Harborside's inventory methods fail either of these general requirements, he could not force the company to comply with the specific rules of section 1.471-3.  But this argument misapprehends the statute and its implementing regulations.

As discussed, section 471(a) mandates that "inventories shall be taken by [a] taxpayer *on such basis as the Secretary may prescribe* as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income."  I.R.C. § 471(a) (emphasis added).  Under this authority, the Service has promulgated detailed regulations, the validity of which Harborside does not question, governing how taxpayers are to compute their inventories.  *See* Treas. Reg. §§ 1.471-1 to -11.  The Treasury Regulations echo the section 471(a) requirement, providing that "the inventory practice of a taxpayer should be consistent from year to year, and greater weight is to be given to consistency than to any particular method of inventorying or basis of valuation *so long as the method or basis used is in accord with §§1.471-1 through 1.471.11*."  *Id.* § 1.471-2(b) (emphasis added).

Harborside wants us to treat section 471(a) as though it does not reference the implementing regulations, but it

plainly does.   Contrary to Harborside, compliance with section 471(a) cannot be assessed without consideration of its implementing regulations, here section 1.471-3(b).  *See Thor Power Tool*, 439 U.S. at 533–35, 538–40 (holding that where a taxpayer using the "cost or market, whichever is lower" method did not comply with section 1.471-4, its inventory failed to clearly reflect income).  Harborside cites no authority suggesting otherwise.

*Second*,  Harborside  argues  that  because  the Commissioner did not frame his challenge to Harborside's inventory method in terms of a failure to clearly reflect income, he was without authority to compel Harborside to change its accounting methods—i.e., the way Harborside computed its inventory.  This argument, too, is erroneous. Harborside is correct that the Commissioner may not force a taxpayer to use a particular accounting method where the taxpayer's chosen method conforms to law.  *See, e.g.*, *Jim Turin & Sons, Inc. v. Comm'r*, 219 F.3d 1103, 1109 (9th Cir. 2000).  But the Commissioner does have the power to assert deficiencies where a taxpayer's method of accounting does *not* conform with the applicable regulations.  *See, e.g.*, *Thor Power Tool*, 439 U.S. at 533 (sustaining the Commissioner's disallowance of an inventory method of accounting that "was plainly inconsistent with the governing [Treasury] Regulations").  That is all the Commissioner sought to do here.

*Third*, Harborside argues that under our decision in *Max Sobel Wholesale Liquors v. Commissioner*, 630 F.2d 670 (9th Cir. 1980), section 1.471-3(b) cannot be grounds for disallowing Harborside's cost computation because it was (in Harborside's view) a "permissible" determination of cost of goods sold.  But Harborside misreads *Max Sobel*, which held that a statute limiting deductions did not give the

Commissioner the authority to deny exclusions for cost of goods sold.  *See id.* at 671–72.  The Commissioner is not purporting to invoke section 280E as a basis to deny Harborside exclusions for cost of goods sold.  *Max Sobel* does not address the issue here, namely, which expenditures are includible in cost of goods sold in the first place.

*Finally*, Harborside argues that subsection (d) of section 1.471-3 exempts it from the requirements of subsection (b) and permits it to include its purchasing and processing costs in its inventory cost.  But section 1.471-3(d) does not apply to Harborside.  That provision applies only to industries "in which the usual rules for computation of cost of production are inapplicable." Treas. Reg. § 1.471-3(d).  In such industries, "costs may be approximated upon such basis as may be reasonable and in conformity with established trade practice in the particular industry."  *Id.*  The regulation provides three examples of such industries: "[f]armers and raisers of livestock," certain "[m]iners and manufacturers," and "[r]etail merchants" that use the "retail method" to approximate costs.  *Id.*  Rules for each such industry are further detailed in respective sections of the Treasury Regulations.  *See id.* §§ 1.471-6 to -8.

Section 1.471-3(d) is inapplicable because Harborside has failed to show that marijuana retail is an industry "in which the usual rules for computation of cost of production are inapplicable." *Id.* § 1.471-3(d).  Each of the types of taxpayers to which subsection (d) applies faces some difficulty in using the standard methods.  For example, farmers require special inventory costing rules "[b]ecause of the difficulty of ascertaining actual cost of livestock and other farm products."  *Id.* § 1.471-6(c).  Farmers therefore are permitted to approximate their costs under special regulations.  *Id.* (permitting farmers to use the "farm-price

method" or "unit-livestock-price method" for approximating cost).

Harborside presents no cogent argument for why a marijuana dispensary cannot compute its "cost of production" under the usual rules that apply to a retailer. And it does not claim that it is a "retail merchant" that uses the "retail method" in its cost accounting. *Id.* § 1.471-3(d)(3). Harborside's only argument appears to be that because its expenditures would be disallowed as deductions under section 280E, it instead should be allowed to exclude those amounts as costs by electing to proceed under section 1.471-3(d) rather than section 1.471-3(b). But Harborside does not ground this entitlement to different treatment in any statutory or regulatory authority. That the normal inventory accounting rules may be unfavorable to Harborside does not make them inapplicable to it. Section 1.471-3(d) therefore bears no relevance to Harborside's tax liabilities for the years at issue.

We thus hold that the Tax Court did not err in concluding that Harborside's inventory cost for each of the years at issue is determined by section 1.471-3(b). Although Harborside is subject to serious tax consequences because of the nature of its business, *see* I.R.C. § 280E, the primary argument it has preserved for our review fails based on generally applicable provisions of federal tax law. Marijuana dispensaries, like all taxpayers, must abide by the intricacies of the Internal Revenue Code and the Treasury Regulations.

This leaves Harborside arguing that the Tax Court erred in its application of section 1.471-3(b) by failing to allow at least some of Harborside's claimed exclusions (such as employee salaries relating to negotiating marijuana purchases) as "necessary charges incurred in acquiring possession of the goods." Treas. Reg. § 1.471-3(b).

However, as with its Sixteenth Amendment claim, Harborside failed to raise this argument before the Tax Court.  The issue is therefore forfeited for our review.  *See Sparkman*, 509 F.3d at 1158–59; *Merkel v. Comm'r*, 192 F.3d 844, 852 n.10 (9th Cir. 1999).

We therefore express no opinion on whether any of Harborside's claimed exclusions may have been properly regarded as inventory cost under section 1.471-3(b).  Nor do we address arguments made by amici that Harborside does not advance here.  *See United States v. Gementera*, 379 F.3d 596, 607 (9th Cir. 2004) ("Generally, we do not consider on appeal an issue raised only by an amicus." (quotations omitted)).

**AFFIRMED.**